### DRAPER et al. v. OSWEGO COUNTY FIRE RELIEF ASS'N.

(Supreme Court, Appellate Division, Fourth Department.   November 14, 1906.)

1. INSURANCE—CONDITIONS IN POLICY—FORFEITURE—WAIVER.

After the destruction of an insured building by fire, the fact that insured complied with a request of one of the directors of the insurer to attend a meeting of the board of directors, thereby being put to expense and there being examined in respect to his loss, was not a waiver by the insurer of a condition of the policy providing that it should not be liable for any loss resulting from fire built within 50 feet of insured building.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1078.]

2. SAME.

A condition of a policy of insurance providing that insured should not be liable for any loss resulting from fire built within 50 feet of insured building was not subject to waiver after the destruction of the building by fire built within the prohibited distance, since the loss of the insured building resulting from such fire ended ipso facto the liability on the policy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 941.]

Appeal from Trial Term, Oswego County.

Action by Oliver S. Draper and another against the Oswego County Fire Relief Association. From a judgment for plaintiffs, and order denying a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

S. C. Huntington, for appellant.
Irving G. Hubbs, for respondents.

NASH, J.   The action is upon a policy of insurance to recover the value of a barn covered by the policy issued to the plaintiff Draper, destroyed by fire.

The by-laws of the association, which are to be read as conditions of the policy, provide:

"Sec. 7. Where fire is used in any building on the premises within one hundred feet of any insured building, for the purpose of making sugar, or stripping tobacco, or curing hops, or drying apples, this association will not be liable for any loss resulting from such fire; nor will this association be liable for any loss resulting from any open fire, built by the insured, with his knowledge or consent, within fifty feet of any insured building."

"Sec. 10. In case of loss by fire or lightning, the loser shall give notice to the secretary and director of the subordinate grange, and said director shall notify the directors of two adjoining granges within five days, whereupon the said directors shall proceed to examine the loss or damage, and to adjust the same. In case the parties cannot agree, then said directors shall notify the president, who shall call the board of directors together to adjust the same, and their decision shall be final."

The assured, in violation of section 7, built a bonfire within 40 feet of the insured building, a spark from which was carried to the roof of the barn, causing the loss. Three of the defendant's board of directors went to the place of the fire for the purpose of adjusting the loss. They found that the fire was set within 50 feet of the barn, and told Draper that they could not adjust the loss, but would make out proofs of loss, so it could be presented to the board of directors. Proofs

of loss were made and verified by Draper, and by him sent by mail to Welling, the secretary of the defendant. Thereafter a meeting of the board of directors was called, and Potter, one of the directors, wrote to the plaintiff Draper, informing him of the date of the meeting and stating that the directors desired him to be present. Draper went 40 miles to Oswego, the place of the meeting, paying his fare both ways, attended the meeting, was examined as to the loss, and told that he could be excused. No formal action in relation to the adjustment of the loss by the board of directors appears to have been taken. Nothing further was done, and this action to recover the loss was commenced.

The plaintiffs claim a waiver of what is termed "a forfeiture," by reason of the violation of the 50-foot clause of the policy. The court charged the jury that a waiver exists when there is an intention to waive unexpressed, but clearly to be inferred from the circumstances, or where there is no such intention in fact, but the conduct of the insurer has misled the insured into acting upon a reasonable belief that the company have waived some provision of the policy. "You cannot find waiver in this case solely from the transaction which occurred on April 28th, when the three directors and adjusters of the defendant went to the plaintiff's property and had an interview with the plaintiff at that place. You cannot do it because the evidence clearly shows, uncontradictedly, that at that time the adjusters said in substance that because of the plaintiff's failure to comply with the conditions of the policy they were not able to make an adjustment, and the matter would have to be brought before the board of directors. * * * You cannot find waiver arising solely from the fact that the proofs of loss were taken by the company and were retained by it. If there is a waiver here, it must be based upon the transactions connected with the plaintiff's visit to Oswego early in August, the letter to the plaintiff, his going to Oswego, his appearance there before the board of directors, and his examination as to the details of his loss by them." We think the fact that Draper complied with the request to attend the meeting of the board, that he was put to expense in complying with such request, and was examined in respect to his loss, did not amount to a waiver by the board of the condition of the policy that had been broken.

It is said that the directors knew of the fact that the condition had been broken; that the failure to notify the plaintiff that the condition of the policy would be insisted upon induced the plaintiff to go to Oswego, and submit to an examination; that, but for the belief that the company intended to waive the forfeiture, the plaintiff would not have gone to Oswego, and would have been saved the expense of the journey, and the presentation of himself before the board. It cannot be said that by the mere request to attend the meeting the plaintiff was induced to believe that it was the intention of the board to waive the condition of the policy. The directors could not take any action as adjusters except at a meeting of the board. They could not be regarded as intending to do that which they had no power to do until they met together as a board and acting as such. They could not make

any decision or take any action looking to a waiver of the condition of the policy, or as adjusters, until they had met together as a board of directors. Under the by-law of the association which provides that, where the loss is not or cannot be adjusted by the three directors, the board of directors shall be called together to adjust the same, and that their decision shall be final, the directors cannot take any action until they have met together as a board of directors. Until organized as a board the directors could neither adjust the loss or waive the condition of the by-law which had been violated. The condition of the policy by which it is provided that the association shall not be liable for any loss resulting from a fire built within 50 feet of the insured building cannot therefore be held to have been waived.

There is the further question whether the condition of the policy is the subject of an implied waiver under the rule that if, after knowledge of the forfeiture, the company recognizes the continued validity of the policy or does acts based thereon, or requires the assured, by virtue thereof, to do some act or incur some trouble and expense, the forfeiture as a matter of law is waived. Titus v. Glens Falls Ins. Co., 81 N. Y. 410. In that case the policy contained a provision that it should be void if foreclosure proceedings should be commenced against the insured property, which provision was alleged to have been violated. It was held that effect should be given to the clause creating the forfeiture; but that the forfeiture caused by the foreclosure proceedings was waived by the defendant. After the fire, and after the defendant had notice of the proceedings, it required the insured to appear before a person appointed by it for that purpose, to be examined under a clause of the policy, and he was there subjected to a rigorous inquisitorial examination. The court said:

"It had the right to make such examination only by virtue of the policy. When it required him to be examined, it exercised a right given to it by the policy. It then recognized the validity of the policy, and subjected the insured to trouble and expense after it knew of the forfeiture now alleged, and it cannot now, therefore, assert its invalidity on account of such forfeiture."

The opinion further states:

"When there has been a breach of a condition contained in an insurance policy, the insurance company may or may not take advantage of such breach and claim a forfeiture. It may, consulting its own interests, choose to waive the forfeiture, and this it may do by express language to that effect, or by acts from which an intention to waive may be inferred, or from which a waiver follows as a legal result. A waiver cannot be inferred from its mere silence. It is not obliged to do or say anything to make the forfeiture effectual. It may wait until claim is made under the policy, and then, in denial thereof, or in defense of a suit commenced therefor, allege the forfeiture. But it may be asserted broadly that if in any negotiation or transaction with the insured, after knowledge of the forfeiture, it recognized the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as a matter of law waived."

In Benninghoff v. Agricultural Ins. Co., 93 N. Y. 495, Ruger, C. J., delivering the opinion of the court said:

"It is claimed that subsequent to the issue of the policy such transfers of the title to the property insured had been made by the owners, without the

consent of the defendant, that certain clauses in the policy had been violated, and by reason thereof it had been forfeited and avoided. It may be premised that the transfer of the title of property insured under a policy prohibiting such transfer does not operate ipso facto to annul the right to have it declared void by raising that question at the proper time if it should eventually elect so to do."

In these and other cases cited in support of the claim of a waiver on the part of the defendant the conditions of the policy held to have been waived were in the nature of an increase of the risk, for which the insurance company might or might not avail itself of the right to declare the policy void. Here the condition is not that, if the fire is set within 50 feet of any insured building, it shall render the policy upon the building void, but that the association will not be liable for any loss resulting from such fire. A fire set within 50 feet of a building might or might not increase the risk, according to the circumstances under which the fire is built and cared for. But a fire set within the prohibited distance resulting in the loss of the building has the effect of destroying the contract, and ends ipso facto all liability thereon. The policy has no more force or effect than if it had by its terms expired. The board of directors are, by the provisions of its constitution, the authorized agents of the association. While they have the same power to waive defects or ratify invalid policies as officers in a stock insurance company (Pratt v. D. H. M. F. Ins. Co., 130 N. Y. 206, 29 N. E. 117), their powers are limited by the by-laws of the association. A policy which has expired, or as to which all liability of the association thereon under the by-laws has ceased, or become extinct, is at an end, and not a defective or invalid policy, the provisions of which can be ratified or which may be waived.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event upon questions of law only.

So ordered. All concur.