evidence to justify a finding that this wrench was an unsafe appliance, or that it was furnished by the defendant to be used for such a purpose; and the evidence is not sufficient to sustain a finding of the defendant's negligence.

The judgment and order should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

SEWELL v. HOME INS. CO.

(Supreme Court, Appellate Division, Second Department. March 5, 1909.)

1. TRIAL (§ 177*)—MOTIONS BY BOTH PARTIES FOR DIRECTION.

The court is made the judge of the facts, where both parties move it for a direction.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. § 177.*]

2. DEEDS (§ 56*)—DELIVERY.

There was a delivery of a deed and a consequent change in interest, avoiding a fire policy, where the vendor and vendee, who had made the cash payment, met with S., the attorney, who had prepared the deed and the bond and mortgage for deferred payment, all of which were acknowledged, and he told them he could not record them till a copy of a map referred to therein, the copy then before them not belonging to them, was delivered to him, and thereupon the parties left the instruments with him, to record on obtaining the map; each of them, while describing the map as a certain survey made several years before, and providing that a copy of it should be filed, having given the location, description, and boundaries fully, irrespective of the map and survey.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 117; Dec. Dig. § 56.*]

3. INSURANCE (§ 328*)—FIRE INSURANCE—CHANGE OF POSSESSION.

There was a change of possession, from that of a tenant to a vendee in possession, avoiding a fire policy, where during the term of the lease the property was sold to one then in physical possession as resident agent of the lessee, and thereafter, while he continued to reside on the property, no further rent was paid, but he, in addition to his cash payment of the purchase, commenced to pay interest on his deferred payments, and made extensive alterations on the premises; the presumption being that his occupancy was that of vendee under the contract, he having, in the absence of an express agreement, an implied consent that he might enter into possession as owner.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 795; Dec. Dig. § 328.*]

Appeal from Trial Term, Nassau County.

Action by Robert V. V. Sewell against the Home Insurance Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before WOODWARD, JENKS, GAYNOR, RICH, and MILLER, JJ.

Rutger Bleecker Miller, for appellant.
Dickinson W. Richards, for respondent.

JENKS, J. The plaintiff appeals from his judgment for $111, admitted by answer to be due and tendered by an offer of judgment. The action is to recover $5,111 upon a fire insurance policy that cov-

ered real and personal property. The defense is a change "in interest, title, and possession" of the realty against an avoiding provision in the policy. At the close of the evidence the defendant moved for a direction of a verdict for the plaintiff for $111, and the plaintiff moved for a direction for the full amount of his claim. The court granted the plaintiff's motion, under section 1185 of the Code of Civil Procedure. The defendant thereupon moved to set aside the verdict, which was done, and the present judgment was directed.

The learned court decided that there was "a clear change of interest," and the correctness of that decision is challenged on this appeal. The policy was issued in September, 1904, to Underhill, owner of the premises. On October 4, 1906, Sewell and Underhill made a contract whereby Sewell agreed to purchase the premises for $5,000 cash and his purchase-money bond and mortgage for $20,000, payable in 5 years, with 5 per cent. interest, payable semi-annually. The deed was to be dated October 1, 1906. Sewell resided on the premises at the time the contract was made, and continued to reside there until the day of the fire, April 5, 1907. The learned counsel for the appellant contends that there was not a delivery of the deed and a transfer of the premises from Underhill to Sewell until after the fire. A week or ten days before the fire the vendor and vendee met at the former's house, together with Mr. Stoddart, an attorney at law, who had prepared the deed and the bond and mortgage required by the said contract. Mr. Stoddart testifies that he told the said parties that he could not record the instruments until a certain "map" referred to in them was delivered to him, and thereupon the parties left these instruments with him, which were not recorded by him until some time after the day of the fire. "The question of delivery, involving, as it does, acceptance, is always one of intention, and, where there is a conflict in the evidence, it becomes a question of fact to be determined by a jury. There must be both a delivery and acceptance, with the intent of making the deed an effective conveyance." Ten Eyck v. Whitbeck, 156 N. Y. 352, 50 N. E. 966.

There is practically no contradiction by either party of Mr. Stoddart's testimony as to the doings before and at this interview. If there were both parties had moved the court for a direction, and had thus made it the judge of the facts. It is not disputed that upon the execution of the contract, months before, the vendor paid the $5,000 cash consideration and began to pay the interest required by the bond and mortgage. It is not disputed that the deed and the bond and mortgage was fully prepared (save as to the map, which I shall discuss hereafter), were duly acknowledged on March 16, 1904, and were produced at this interview. Mr. Stoddart, asked whether the bond and mortgage were handed to him, answered:

"I don't know as handed. They all were handed. I picked them up. That would be a better way to put it."

He continued:

"There was, I think, some suggestion that I was to hold onto the mortgage until the map was delivered to me, and upon the delivery of the map I was to record the deed and the mortgage and file the map."

Both parties made the suggestion. The "map" was a certain survey. Both deed and mortgage made reference thereto; but the location, description, and boundaries were full and irrespective of this map or survey, which was referred to in both instruments, after the location and description were fully set forth, to facilitate the running of a boundary line. The map is described in the said instruments as a survey made by W. H. C. Pynchon, civil engineer, dated January 25, 1907, and the provision as to it in each instrument was "a copy of which is to be filed in the office of the clerk of Nassau county." But the map itself was in existence at the time of this meeting of the parties; for Mr. Stoddart testifies without contradiction:

"The map was not ready. In other words, the map they had there, did not belong to them."

And, moreover, the map is, as I have shown, definitely described in both deed and mortgage as dated January 25, 1907, and these instruments were acknowledged on March 17, 1907. Mr. Stoddart wished for a "copy" which could be filed; but even that copy was not to be filed simultaneously with the instruments, because the explicit provision therein was: "A copy which is to be filed." There is no question, then, that when the parties thus met the vendee had some months before paid the consideration, that the vendor was in physical possession, that the instruments were produced complete, and acknowledged, and that they were thereupon left with Mr. Stoddart, who "was to record the deed and mortgage and to file the map," which was afterwards done. Indeed, Mr. Stoddart, so far as the parties were concerned, could have recorded the instruments for them, respectively, forthwith, and could have filed the copy of the map whenever one was produced. The delay in record was a mere matter of business procedure on the part of Mr. Stoddart, who, of course, is above any criticism. There is no ritual of delivery, and record is not essential to delivery. There is not the slightest proof but that each party intended to deliver up to the other the instruments in question, without reservation or condition. Mr. Stoddart, then, did not hold the instruments as in escrow for the performance of any condition before delivery, within the rule indicated in Foster v. Mansfield, 3 Metc. (Mass.) 414, 37 Am. Dec. 154.

I think that the learned court was correct in its decision that "there was a delivery of both the deed and the mortgage within the mutual intent of the parties." See Devlin on Deeds (2d Ed.) vol. 1, § 306. In this section the author writes:

"Where a grantor, having executed a deed to his intended wife, hands it to her, and she, after some conversation relating to the deed, gives it back to him for the purpose of having it recorded, there is a sufficient delivery."

See, too, National Bank v. Bonnell, 26 Misc. Rep. 541, 57 N. Y. Supp. 486; Reed v. Marble, 10 Paige, 409; Souverbye v. Arden, 1 Johns. Ch. 239–256; Munoz v. Wilson, 111 N. Y. 295, 18 N. E. 855; Rosseau v. Bleau, 131 N. Y. 177, 30 N. E. 52, 27 Am. St. Rep. 578.

But it is also urged that there could be no delivery because the map was a material and an essential part of the conveyance, and there could be no complete delivery without its existence. But the map, for

the reasons heretofore stated, was not a material and essential part of the conveyance. But, assume that it was; the evidence, as I have pointed out, establishes without. dispute that it was in existence. All that appears is that any copy owned by the parties was not on hand, so that it could forthwith be filed. The reference in the instruments is to a described survey, an existing thing, of which a copy was to be filed, and not simultaneously, as I have said. The several cases cited from Barbour's Reports do not apply. They recognize the rule that where property. cannot be located and described without a map referred to in the instrument, or the property is located and described or sold with express reference to a map, then the map is read into the conveyance. In the only other case cited by the learned counsel for the appellant (Hoyt v. McLagan, 87 Iowa, 746, 55 N. W. 18), it was held. that the grantors did not part with power and control and the right to revoke their deeds when they left them in the hands of a third party until they "got proper abstracts of title"; the court saying that each party thereby reserved control of their deeds, asking, if otherwise, why did the parties thus deposit the deeds, when they themselves could have obtained the abstracts, and why did the parties reserve the right to themselves to determine whether the abstracts were proper? No such question is presented in this case.

But in any event I am of opinion that the case shows a vendee in possession. The vendee was in physical possession of the premises when he made the contract of sale. It appears that he remained thereafter in continuous possession up to the time of the fire. It is not contended that after the execution of the contract his occupancy was that of a tenant, or that he ever paid any rent. The testimony is undisputed that the vendee never had a lease of the premises and never was regarded as a tenant thereof. It appears that the premises had been leased in January, 1904, by this vendor to Russell by lease to expire on March 1, 1907. Russell agreed in the lease to occupy the premises "for the requirements of the Huntington Stud," a corporation, and this vendee then entered upon the premises as the resident agent of that corporation, and had made the payments of rent on account of the lease up to October 1, 1904. This accident of occupancy of the premises explains why the vendee as such did not make any formal physical entry. But Sewell residing in the premises as the agent or servant of the tenant, and Sewell as vendee, are two distinct persons in the eye of the law; and it would be absurd to contend, because he originally came upon the premises perforce of a lease to his principal, that so long as he remained on the premises he must be regarded in that status. After he made the contract for purchase, no rent was paid by any one; but, on the other hand, he paid forthwith the cash consideration, and he began to pay the interest on his bond and mortgage, which constituted part of the consideration. The presumption would be that his occupancy was that of vendee under that contract. Moreover, he began to make and made extensive alterations and repairs upon the premises, although he does testify that he asked permission. In the absence of any express agreement, there was an implied consent that he might enter into possession of the premises as owner. Miller v. Ball, 64 N. Y. 293; Teller v. Schulz, 123 App. Div. 884, 108 N. Y.

Supp. 325. As the court say in Miller v. Ball, supra, it cannot be inferred that the purchaser meant to retain the consideration and at the same time retain the control of the land from the only person interested in the use and protection of the same. Such possession would avoid the policy of insurance. Brighton Beach Racing Association v. Home Ins. Co., 113 App. Div. 728, 99 N. Y. Supp. 219, affirmed 189 N. Y 526, 82 N. E. 1124.

The judgment must be affirmed, with costs. All concur.