POINT GRATIOT SAND & GRAVEL CO. v. HARTFORD FIRE INS. CO.

(Supreme Court, Trial Term, Erie County.  June, 1912.)

1. INSURANCE (§ 282*)—MARINE POLICY—"UNCONDITIONAL AND SOLE OWNER-SHIP."

Where, prior to the writing of a policy on a tug, plaintiff, the insured, contracted in writing to sell the tug to C., in consideration of $500 paid and a note for $2,300 given by C., payable on or before May 1, 1910, agreeing to give C. immediate possession of the tug, and a clear bill of sale covering the purchase on payment of the note, which was thereafter extended, C. being in possession at the time the insurance was effected, and at the time of the loss, the contract was in part executed; and hence plaintiff had not "unconditional and sole ownership" of the property, as required by the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 601-635; Dec. Dig. § 282.*

For other definitions, see Words and Phrases, vol. 8, pp. 7154, 7155.]

2. INSURANCE (§ 396*)—MARINE POLICY—ATTACHING RISK—WAIVER.

Where a marine policy provided that the entire policy, unless otherwise provided by agreement indorsed thereon, should be void if the interest of the insured be other than unconditional and sole ownership, and under such clause the insurance never attached because at the time it was effected insured had not such ownership, owing to a partially executed contract for the sale thereof to another, and the policy also provided that the insurer should not be held to waive any provision by any requirement, act, or proceeding on its part relating to the appraisal or to any examination therein provided for, the fact that, after proofs of loss had been submitted and amended, the adjuster acknowledged their receipt and demanded an examination of one of the officers of plaintiff company and requested that he appear at the office of the insurer's attorneys for examination, which he did, and after the examination was completed the adjuster stated that he had no further questions, there was no waiver of the condition requiring unconditional and sole ownership of the property.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1071-1077; Dec. Dig. § 396.*]

Action by the Point Gratiot Sand & Gravel Company against the Hartford Fire Insurance Company.  Judgment for defendant.

White & Stanley, for plaintiff.

Potter & Potter, for defendant.

WHEELER, J.  This action is brought to recover upon a policy of fire insurance.  On the 20th of September, 1910, the defendant insurance company issued to the plaintiff its policy of insurance, whereby it insured the plaintiff against loss by fire to the steam tug Warnick.  On the 22d of December, 1910, the tug was totally destroyed by fire, and this action is brought to recover upon the policy.

The defendant contests its liability on the ground that at the time the policy was issued the plaintiff was not the unconditional and sole owner of the property insured, and the policy under its terms was

---

therefore void. The policy in question is of the standard form, and contained this provision, viz.:

"This entire policy, unless otherwise provided by agreement endorsed herein or added thereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership."

The evidence shows that on the 12th day of July, 1909, prior to the writing of the policy in question, the plaintiff entered into the following written agreement with Benjamin L. Cowles:

"This agreement, made this 12th day of July, 1909, by and between the Point Gratiot Sand & Gravel Co., of Dunkirk, N. Y., party of the first part, and Benjamin L. Cowles, of Buffalo, N. Y., party of the second part witnesseth: That the party of the first part hereby agrees to sell to the party of the second part the tug Warnick under the following conditions: In consideration of the sum of five hundred ($500.00) dollars in hand paid and a certain note for twenty-three hundred ($2300.00) dollars, given by the party of the second part to the party of the first part and payable on or before the 1st day of May, 1910, the party of the first part hereby agrees to give immediate possession of the said vessel to the purchaser and a clear bill of sale covering the purchase of the said vessel upon payment of the said note May first, 1910.

    "[Signed]           The Point Gratiot Sand and Gravel Co.
                          "By John Weiss, Treasurer. [L. S.]
                          "Benjamin L. Cowles."

In pursuance of the terms of this agreement, possession of the tug was given the purchaser, Cowles, and he was in possession and control of it at the time of the fire. May 10, 1910, the following words were added to the agreement:

"May 10th, 1910, this agreement to be in force until all notes are paid."

At the time the policy was issued there remained unpaid on the purchase price of the tug a balance of $1,300, and at the time of the fire a balance of $800, represented by outstanding notes of Cowles. No bill of sale of the tug was ever given, the record title of the vessel remaining in the plaintiff under its enrollment in the United States custom house at Dunkirk, N. Y.

[1] The question, therefore, is sharply presented whether the interest of the assured is other than that of "unconditional and sole ownership." We are of the opinion that the plaintiff's interest was not that of "unconditional and sole ownership." The contract of sale was not a purely executory contract, but in part at least executed. Possession and dominion of the tug had been delivered to the purchaser. It is true the written evidence of the purchaser's title had not been delivered, and was not to be delivered until the entire purchase price of the tug had been paid. Nevertheless, we think it plain the plaintiff could not have sold and conveyed a good title to the tug to a third party. Had it undertaken to have given a bill of sale of the vessel to another, and such purchaser had demanded possession of the tug from Cowles by virtue of the bill, Cowles could have successfully asserted his prior rights as purchaser under his agreement with the plaintiff. Cowles was the equitable owner of the property, and the plaintiff only had a general vendor's lien on the property for any unpaid balance of the purchase price, fortified by

the possession of the record title, which was not to be delivered until the entire purchase price had been paid. If default were made in paying the purchase price, the seller could only enforce its vendor's lien by a foreclosure and sale of the property in question for the purpose of satisfying any unpaid balance owing. The destruction of the tug while in Cowles' possession, either by fire or by the hazards of navigation, was at the risk of Cowles, and did not relieve him from the obligation to pay for the boat pursuant to his agreement with the plaintiff. If possession had been retained by the seller and the agreement had been to deliver upon payment of the purchase price, and the boat had been destroyed while still in the possession of the vendor, then a different question would have been presented, and doubtless the loss would have been the loss of the seller, because the seller would then have been unable to fulfill his agreement to deliver, and the purchaser would have been absolved from the duty of making further payment.

We have analyzed the contract between the plaintiff and Cowles in relation to the sale of the tug Warnick for the purpose of ascertaining the respective rights and interests of those parties in the property insured. In view of the relations and rights of the vendor and vendee in the tug in question, we are forced to the conclusion that the interest of the Point Gratiot Sand & Gravel Company was not that of "unconditional and sole ownership" within the meaning of the policy. In this conclusion we are supported by ample authority.

In the case of Pelton v. Westchester Fire Insurance Co., 77 N. Y. 605, a policy of insurance was issued to one Brown with loss, if any, payable to the plaintiff, "as collateral, as his interest may appear." The contract of insurance provided that, if the interest of the assured was any other than the entire unconditional and sole ownership of the premises, it must be so represented to said company, or that the said policy should be void. Brown held under a contract of sale of the insured premises and was in possession, but still owed a part of the purchase price. The court held that in equity Brown was the owner, and had not misrepresented the fact when he stated to the insurance company, when he made application for the policy, that he owned the premises. See, also, Sewell v. Underhill, 197 N. Y. 171, 90 N. E. 430, 27 L. R. A. (N. S.) 233, 134 Am. St. Rep. 863, 18 Ann. Cas. 795; Baldwin v. McGrath, 41 Misc. Rep. 40, 83 N. Y. Supp. 582.

In the case of Brighton Beach Racing Association v. Home Insurance Co., 113 App. Div. 728, 99 N. Y. Supp. 219, affirmed in 189 N. Y. 526, 82 N. E. 1124, the plaintiff, as assignee of one Dunne, sought to recover a fire loss on a policy of insurance upon property owned in fee simple at the time the policy was issued by Dunne, who was the party assured. The policy was in standard form, and contained the provision that:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if any change other than death of the insured takes place in the interest, title or possession of the subject of insurance," etc.

Dunne entered into an executory contract of sale of a portion of the property, upon which one or more of the insured buildings stood. The contract gave the purchaser the right to the possession of the property sold, and the purchaser's assignee went into possession of the property. It was held that the purchaser took "title" within the meaning of the insurance policy, and the plaintiff, not being the sole and unconditional owner, was not entitled to recover upon it.

In this connection it should be noted that the court said that the word "interest," as used in the policy of insurance, is "broader and more comprehensive than the word 'title'; it embraces both legal and equitable rights"—citing Southern Cotton Oil Co. v. Prudential Fire Ass'n, 78 Hun, 373, 29 N. Y. Supp. 128.

In Sewell v. Home Ins. Co., 131 App. Div. 131, 115 N. Y. Supp. 345, a vendee was in physical possession of premises when he made the contract to purchase, and remained in possession up to the time of the fire. His occupancy was that of vendee under his contract. The vendor took out the policy of insurance. It was held, following the previous case, that such change avoided the policy, and there could be no recovery thereon.

[2] We therefore reach the conclusion that there can be no recovery under the terms of the policy unless the defendant has in some way waived its rights, and this brings the court to the consideration of the further questions raised in this case. The plaintiff contends that, even assuming that by its terms the policy is to be deemed void for the reasons stated in the foregoing portion of the opinion, nevertheless the insurance company has waived the benefit of the condition, and the plaintiff is entitled to recover.

The facts on which the plaintiff predicates a claim of waiver of the conditions on the part of the defendant are substantially these: After the tug had been burned, and before proofs of loss had been prepared, Mr. Weiss, secretary and treasurer of the plaintiff, was called on the telephone by Mr. E. T. Hitchcock, who informed him that he had been appointed by the insurance company to adjust the loss on the tug, and asked Mr. Weiss to call at his office on the following day. This conversation over the telephone was had on January 1st, and on January 2d Mr. Weiss went to the office of Mr. Hitchcock in the Chamber of Commerce Building, and while there told him that the Point Gratiot Sand & Gravel Company had agreed to sell the tug to Benjamin L. Cowles, and to give him a bill of sale when the whole of the purchase price was paid, and Mr. Weiss thereupon exhibited to Mr. Hitchcock the agreement in question, which is Exhibit No. 1. Mr. Hitchcock inquired whether the plaintiff had ever executed a bill of sale, and was informed that it had not, and Mr. Hitchcock thereupon told Mr. Weiss not to execute a bill of sale; but a short time afterward Mr. Hitchcock asked Mr. Weiss to execute and deliver to Cowles a bill of sale of the tug. On February 7, 1911, proof of loss (Exhibit C) was prepared by Frederick A. Meyer, of Smith-Davis & Co., and forwarded to Charles M. Hall & Co. of New York, who were the agents for the Hartford Fire In-

surance Company. This proof of loss was returned to Smith-Davis & Co. on February 14th by E. T. Hitchcock, together with Exhibit E, in which it is stated that the proof of loss is returned "as incomplete and unsatisfactory to the companies insuring the vessel," and on February 16, 1911, as appears by Exhibit H, Mr. Hitchcock notified Smith-Davis & Co. that the proofs of loss were incomplete and unsatisfactory for the reason that they were not properly executed by an officer of the Point Gratiot Sand & Gravel Company. Thereafter the proof of loss was amended to meet the requirements of the insurance company and again forwarded, and on March 4th Mr. Hitchcock, in Exhibit M, acknowledged the receipt of the amended proof of loss, demanded an examination of the officer of the Point Gratiot Sand & Gravel Company, and requested that Mr. Weiss appear at the office of Potter & Potter, attorneys, No. 36 Dun Building, the following week, for examination. When this demand for an examination was made, Mr. Weiss engaged counsel, and the examination of Mr. Weiss was duly held at the office of Potter & Potter. At the close of the examination, Mr. Hitchcock was asked by Mr. Potter if he had any further questions to ask, to which Mr. Hitchcock replied: "No; that is exactly the way Mr. Weiss stated it to me." Thereafter the proof of loss was returned to the plaintiff, defendant denying liability under the policy. The defendant has never returned, nor offered to return, any part of the premium paid in consideration of the issuance of the policy.

The defendant strenuously insists that, in so far as the plaintiff relies on a waiver to sustain a recovery, it is in no position to avail itself of such a waiver, for the reason no facts are alleged in the complaint upon which such claim is predicated, and that without facts being properly pleaded a party cannot get the benefit of a waiver, if one was made. We are not disposed, at this time, to enter into a discussion of the correctness of the question as to whether the position of defendant is proper or not, for we prefer to dispose of the case on its merits, rather than decide it upon technicalities in the pleading. We therefore dismiss from our consideration the question of pleading raised, and proceed to the examination of the question whether the facts above stated constitute a legal waiver, and entitled the plaintiff to recover on the policy. The books are full of cases in which it has been decided that in a proper case an insurance company may, and often does, waive the conditions contained in its policy. It is unnecessary to cite the many cases contained in our state reports.

In the outset, however, we must bear in mind there exists a vital distinction between cases where the question is whether the risk attaches at all under the terms of the policy, and those cases where, having once attached, the liability of the insurer may be defeated by the happening of some event, or the violation of some condition subsequent to the issuing of the policy of insurance. If the policy provides that a certain class of risks shall not be deemed covered by the policy, a different question is presented from that presented under the terms of a policy providing for a forfeiture of the rights of the

assured in the event of the doing, or the failure to do, certain things required by the terms of the policy. In the one case the policy creates an exception to liability, and is not, properly speaking, a condition. What are the terms of the policy in suit? It was agreed that:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added thereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership."

In other words, the policy, in substance, provides that the risk insured against shall not attach to or cover property unless the interest of the assured in it is that of "unconditional and sole ownership," which was not the fact in this case. The contract is against any liability for a loss to property not so owned. This constitutes an exception to liability under such circumstances. There is no implied waiver under the rule that if, after knowledge of forfeiture, the insurer recognizes the continued validity of the policy, or does acts based thereon, or requires the insured, by virtue thereof, to do some act or incur some trouble or expense, whereby the forfeiture is waived. Such implied waiver exists only when the insurer may or may not avail itself of a right to declare the policy void. It was accordingly held that the provision of the policy against liability was not waived by the fact that the directors of the company, who were required by the by-laws to adjust the loss, requested the insured to attend their place of meeting, 40 miles distant, and be examined as to the loss. Draper v. Oswego County Fire Relief Ass'n, 115 App. Div. 807, 101 N. Y. Supp. 168, affirmed in 190 N. Y. 12, 82 N. E. 755.

Chief Justice Cullen, in his opinion rendered in this case in the Court of Appeals, discussed the distinction between a waiver and an equitable estoppel, and says:

"But the question remains whether the doctrine of waiver is applicable to this case. While that doctrine and the doctrine of equitable estoppel are often confused in insurance litigation, there is a clear distinction between the two. A waiver is the voluntary abandonment or relinquishment by a party of some right or advantage. As said by my Brother Vann in the Kiernan Case [150 N. Y. 190, 44 N. E. 698]: 'The law of waiver seems to be a technical doctrine, introduced and applied by the courts for the purpose of defeating forfeitures. * * * While the principle may not be easily classified, it is well established that, if the words and acts of the insurer reasonably justify the conclusion that with full knowledge of all the facts it intended to abandon or not to insist upon the particular defense afterwards relied upon, a verdict or finding to that effect establishes a waiver, which, if it once exists, can never be revoked.' The doctrine of equitable estoppel, or estoppel in pais, is that a party may be precluded by his acts and conduct from asserting a right to the detriment or prejudice of another party who, entitled to rely on such conduct, has acted upon it. The rule prevailing in this state, that an insurance company will not be permitted to defeat a recovery on a policy issued by it by proving the existence of facts which render it void where it had full knowledge of the facts when the policy was issued (Robbins v. Springfield F. & M. Ins. Co., 149 N. Y. 477 [44 N. E. 159]), rests rather on the doctrine of estoppel than on that of waiver. As already said, the doctrine of waiver is to relieve against forfeiture. It requires no consideration for a waiver, nor any prejudice or injury to the other party. The provision cited from the policy in this case, however, is not a condition the breach of which works any forfeiture. It is simply an exception from the risk insured against. In other words, the policy does not cover a loss

arising from any of the causes specified in the by-law; but, nevertheless, it remains in full force and effect until the subject-matter of the insurance is destroyed. During the burning of this bonfire, had the plaintiff's barn caught fire from another cause, even from another bonfire more than fifty feet distant from the building, the plaintiffs would have been entitled to their insurance. Matson v. Farm Buildings Ins. Co., 73 N. Y. 310 [29 Am. Rep. 149]. To recover in this case, it was, therefore, necessary for the plaintiffs to establish, not that the defendant waived the breach of a condition of the policy, but that in some way the obligation of the defendant was so extended as to include loss from a bonfire situated within fifty feet of the insured building. There is no pretense that any oral contract between the parties included such a loss, and hence there can be no right to a reformation of the policy. The only other ground on which the plaintiffs could succeed was by establishing that the defendant has estopped itself from denying that the loss fell within the terms of the policy by some action or conduct which had misled the plaintiffs to their injury. There is no evidence in the record to support such a claim. Shortly after the fire one of the plaintiffs was informed by the three directors who visited him that they could not adjust the loss because the fire was occasioned by a cause excepted from the policy. They directed the preparation of proofs of loss and referred him to the board of directors. This was the course of procedure prescribed by the by-laws. There was no misrepresentation by any of the officers of the defendant. The plaintiff knew how the fire was caused, and his attention had been called to the exceptions in the risks insured against. The expenditures incurred by him in preparing the proofs of loss and attending the meeting of the directors were made with full knowledge of the facts. It might have happened that the directors would allow or compromise his claim, at least, that was the only chance the plaintiffs had of being paid their loss in whole or in part. No expenses incurred in the plaintiffs' unsuccessful efforts can be justly charged to the action of the defendant."

The court cites the decisions of Knights, etc., v. Schoaf, 166 Ind. 367, 77 N. E. 738, and McCoy v. N. W. M. R. Ass'n, 92 Wis. 577, 66 N. W. 697, 47 L. R. A. 681, as holding the same doctrine. We would call attention to but one further case, and that is the case of Weed v. London & Lancashire Fire Ins. Co., 116 N. Y. 106, 22 N. E. 229, where one of the conditions of the policy was that:

"If the interest of the insured in the property be any other than the entire, unconditional and sole ownership of the property for the use and benefit of the insured, * * * it must be so represented to the company and so expressed in the written policy, otherwise the policy shall be void."

These conditions were not met. The property was destroyed by fire, and one R., an insurance adjuster in the employ of defendant, had thereafter the "entire charge of the loss," and he, with knowledge of the outstanding interest or conveyance, entered into negotiations with the plaintiff respecting the proofs of loss filed by him, and pointed out certain defects therein, inducing plaintiff to believe that, if further proofs were made, the loss would be adjusted and paid. Further proofs were subsequently made and received by R. In an action it was held that said conditions were precedent to the attaching of the risk, and as the plaintiff had no title when the policy was issued, which fact was not communicated to the insurance company, the condition was broken the moment the policy was delivered and the insurance void; that the negotiations with R. did not constitute a waiver of the condition as he was not a general agent or officer of the defendant, but a special agent, with authority limited to ascertaining and adjusting the loss, and there could be no recovery.

The evidence in the case before us shows that the defendant here never recognized its liability under the policy in suit. It never promised to pay the loss. Hitchcock, the adjuster, when he learned the facts, called attention to the fact that the insurance company was not liable. It is true that the insurance company, under the provisions of the policy, asked for an examination of one of the plaintiff's officers, but the policy expressly provided that:

"This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for."

It does not appear that the adjuster had any power or authority to bind the defendant, or to reform its contracts, or to make new agreements for it.

The case of Draper v. Oswego County Fire Relief Ass'n, 115 App. Div. 807, 101 N. Y. Supp. 168; Id., 190 N. Y. 12, 82 N. E. 755, holds that, where even the directors hold such an examination, it does not, under a policy like this, constitute a legal waiver of their rights to insist upon the terms and conditions.

We can reach no other conclusion than that the plaintiff cannot prevail in this action. The plaintiff's complaint is therefore dismissed.