Morris M. CONKLIN, Plaintiff and
Appellant,

v.

NORTH AMERICAN LIFE & CASUALTY
COMPANY, Defendant and Respondent.

No. 7698.

Supreme Court of North Dakota.

March 18, 1958.

McGee & Van Sickle, Minot, for appellants.

Waldron & Kenner, Minot, for respondent.

GRIMSON, Chief Justice.

Plaintiff brings this suit against the defendant, North American Life & Casualty Company, upon an accident insurance policy, dated May 6, 1946. He claims that on Oct. 8, 1948, while out with a hunting party, a gun in the hands of another member of the party, was accidentally discharged; that the blast penetrated his right leg between the ankle and the knee, injuring both the tibia and flesh of the leg, and as a result thereof he lost his foot and his leg; that since that time he has been wholly and continuously disabled. On that ground he asks payment of $3,400 as indemnity which he claims is due under the terms of the policy, and further claims payments for continued disability. Defendant admits the policy and the injury but claims, not only that it has made full payment under the policy, but has overpaid plaintiff in the sum of $2535.71.

By stipulation a jury was waived and the case was tried to the court. The court found the defendant had fully paid the plaintiff as provided by the policy and that the plaintiff was not totally disabled. Judgment was granted for a dismissal of the action. This is an appeal from that judgment and a trial de novo demanded.

As the plaintiff and defendant differ upon the construction of the policy in regard to classification of injuries and payments, it is necessary to set out the pertinent terms of the policy.

This is an accident policy, issued as a Golden Anniversary Policy of defendant on the special terms of $40 per annum and providing an indemnity of $50 per week for accidental injuries to the insured. It provides that the defendant:

"Does hereby insure Morris M. Conklin * * * against loss resulting from accidental bodily injuries sustained during the terms of this policy as hereinafter limited and provided. * * *"

Examination of the policy shows that it provides for three classes of injuries which are indemnified separately. It provides first, for:

"Accident Indemnities.
Clause 1. If such accidental bodily injuries shall wholly and continuously disable the insured within ninety days from date of accident and prevent the Insured from performing any and every kind of duty pertaining to his occupation, and during the period of such continuous disability shall result in any one of the following losses enumerated in this clause, or within one hundred eighty days from date of accident, irrespective of total disability, result in like manner in any one of such losses, the Company will pay the amount set opposite such loss, and in addition thereto, the weekly indemnity from date of accident to the date of such loss.

| For loss of | A Sum Equal to Weekly Indemnity for |
|---|---|
| Both Hands or Both Feet or Sight of Both Eyes, | 200 Weeks |
| Either an Arm or Leg, | 132 Weeks |
| Either Hand or Foot, | 100 Weeks |
| ****** | ****** |
| ****** | ****** |
| ****** | ****** |

Provided always, that if more than one of the losses enumerated in this clause shall result from any one accidental injury, the Company will pay only for the loss for which the largest amount is specified.

Or, in the event of the loss of both hands, or of both feet; or of the sight of both eyes, covered and defined as above, if the Insured shall so elect in writing within ninety days after the date of such loss, the Company will pay, in lieu of the specific indemnity enumerated in Clause 1, for such loss, the weekly accident indemnity as provided in Clause 2 for the period during which he shall live and be totally and continuously disabled from performing any and every kind of duty pertaining to his occupation. The Insured shall furnish the Company satisfactory evidence of the continuance of such disability. The occurrence of any loss named in this schedule shall immediately terminate the policy."

Then it provides for:

"Total Disability
Clause 2. Or, if such accidental bodily injuries shall not result in a loss as specified in Clause 1, but shall, within sixty days from date of accident, continuously and wholly disable and prevent the Insured from performing any and every kind of duty pertaining to his occupation, (Which was designated as keeper of a general store.)

The Company will pay the insured the weekly indemnity for the entire period of such total disability."

828

Finally it provided for:

"Partial Disability Indemnity Clause 3. Or, if such accidental bodily injuries shall not result in a loss as specified in Clause 1, but shall, within sixty days from date of accident, or immediately following, total disability for which claim is made under Clause 2, continuously disable and prevent the Insured from performing one or more important daily duty or duties pertaining to his occupation, the Company will pay the Insured one-half of the weekly indemnity for the period of such partial disability not exceeding one hundred consecutive weeks."

▇▇▇ When the language of a contract is clear and unequivocal it must be construed according to the meaning thereof. Sec. 9–0702, NDRC 1943, and the intention of the parties, if that can be ascertained therefrom. Sec. 9–0703, NDRC 1943. It should be construed as a whole and all of its parts considered together and harmonized. Every clause, sentence or provision should be given effect consistent with the main purpose of the contract. Sec. 9–0703, NDRC 1943. See also 44 C.J.S. Insurance §§ 294, 298, pp. 1155, 1196; Kinard v. Mutual Benefit Health & Accident Ass'n, D.C., 108 F.Supp. 780.

The language of the policy shows clearly that both parties thereto intended that indemnity was provided for the insured in case of accidental injury resulting in loss of limb, sight or time according to the provisions and limitations prescribed in the policy.

Plaintiff claims that the policy should be construed so that the results of his injuries entitled him to indemnity under Clause 2 of the policy. Defendant claims it should be construed so they come under Clause 1. To determine that, it is necessary to consider not only the provisions of the policy but also the results from the injuries the plaintiff suffered.

On Nov. 12, 1948, plaintiff reported his accident to the defendant and claimed as a result of the injuries he was unable to do any of his work. He had much trouble resulting from that injury. Defendant made its first payment under the policy of $285 on Nov. 17, 1948. That was $50 per week from the date of the accident. On Jan. 21, 1949, plaintiff signed a further report claiming he was still "not able to do any work." On Sept. 7, 1950, amputation of the leg six inches below the knee was had. The trouble still continued so that another amputation of the leg was had 3½ inches below the knee. It seems that osteomyelitis had set in on the bone so that a further operation had to be done. On September 10, 1952, the leg was amputated above the knee. There are no other grounds given for that amputation except the original injury. The provision in Clause 1 provides indemnity for the loss of a foot or a leg. Nowhere else in the policy is there any provision made for such a loss. Clause 2 provides for indemnity for total disability and Clause 3 provides indemnity for partial disabilty but both clauses are limited by the provision that such indemnity shall be provided only "if such accidental bodily injury shall not result in a loss provided in Clause 1." It is only when total disability develops from an injury not included in the specified losses enumerated in Clause 1, and when both feet or both legs or the sight of both eyes are lost as provided in Clause 1, that indemnity is provided for total disability under Clause 2.

The appellant argues that an insurance policy, if construed according to the intention of the parties, it must be held to mean that the greatest indemnity is applicable to the greatest loss. He claims that, therefore, the plaintiff, if he proves total disability in addition to the loss of a leg, the policy should be construed to allow him indemnity under Clause 2. He cites Anderson v. Aetna Life Insurance Co., 75 N.H. 375, 74 A. 1051, 28 L.R.A.,N.S., 730, which lays down the general principle for which plaintiff contends, and which decision he claims applies to the case at bar.

While the policy in the Anderson case differs from the policy in the case at issue, both adhere to the general principles that the greatest indemnity is provided for the greatest loss. In the case at bar the plaintiff's evidence shows the loss of a foot and a leg. For that the payment of indemnity for 132 weeks is specifically provided in Clause 1. Such a loss does not generally cause total disability. The evidence shows that plaintiff himself, carried on various enterprizes outside of his occupation in spite of that loss. If, however, the evidence had shown the loss of two legs it would be generally considered a total disability and he would have received indemnity for life as provided in Clause 1 and Clause 2. Thus the policy provided that the greatest loss shown in the evidence would receive the greatest indemnity. In the policy in the Anderson case the specific losses and indemnities were written in the alternative which is not the case in the policy here in issue. The court held in the Anderson case that where the insured described only the specific injuries like, the loss of a hand, he was entitled only to the indemnities provided therefor. That is also true in the case at bar. When, however, the insured described in addition thereto another injury received in the same accident from which he received separate results, such as injury to the head which resulted in loss of memory, he could disregard the lesser injury of the loss of a hand and come within the provision for permanent injuries and recover the indemnity provided therefor. Clearly the Anderson case differs from the case at bar and that opinion does not apply.

Plaintiff also argues that the amputation in the case at bar were a part of the "medical process rather than the result of the injury." The evidence clearly indicates, however, that the injury by that shot gun blast to the bone and flesh of the leg was the cause of the infection in the bone and the other troubles which developed in course of the healing of the wound and the adjustments of the stump of the leg so that he could use an artificial leg.

Plaintiff next argues that the defendant actually made the indemnity payments for total disability as provided in Clause 2 and must now be held to continue those payments as plaintiff claims to be still totally disabled. It is true that defendant's first payments were made on the ground of total disability of plaintiff within the 90 days after the injury. When, however, the loss of the foot and leg happened, defendant's liability came under Clause 1 by the terms of the policy. It is also true that after the payment of that indemnity for 132 weeks defendant continued the same indemnity payments for almost a year.

■ To hold the defendant liable under Clause 2 because of his action in connection with the payments it is necessary that the defendant has thereby waived the terms of the policy, or that he is estopped from denying that the payments were made under Clause 2 of the policy.

■ Waiver is the intentional relinquishment of a known right. The essentials of a waiver are the knowledge of the existence of rights and an intention to relinquish such rights. Kessler v. Thompson, N.D., 75 N.W.2d 172, 173, 185; Meyer v. National Fire Ins. Co., 67 N.D. 77, 269 N.W. 845. An estoppel refers to an abatement raised by law of the rights and privileges of the insurer where it would be inequitable to permit their assertion. 16 Appleman's Insurance Law and Practice. Waiver & Estoppel, Sec. 9081, p. 594. See also 19 Am.Jur. Estoppel, p. 64. The essentials of an estoppel are that there has been some act or conduct on the part of one party upon which the other party has acted to his disadvantage.

In support of his claim that the payments were for total disability under Clause 2, plaintiff cites the following letter from one, E. S. Hagerty, Defendant's Claim Examiner, dated Feb. 1, 1954:

"Dear Mr. Conklin:
"Enclosed please find our check for $100.00 covering partial disability from Nov. 19, to Dec. 17th.

"In reviewing our complete files we note that it would appear that you are now able to return to a full day's work. Under these circumstances it is necessary to consider your disability as partial disability at this time.

"We wish to offer this as an explanation of the enclosed check and upon receipt of a completed enclosed attending physician's report we shall be happy to give further consideration to partial benefits under your claim."

The plaintiff had his attorney refuse that offer and return the check. Thereupon defendant sent a check for $800 to bring the $50 weekly payments up to date. Plaintiff says that the attempt to change the basis of payment to Clause 3 clearly indicates that the previous payments had been made under Clause 2 and that that is further corroborated when plaintiff refused to consent thereto the defendant resumed the payments as originally made. Mr. R. E. Copps, Second Vice President of defendant, in charge of claims since 1952, then had a complete survey made of plaintiff's policy and claim which showed that plaintiff's injuries resulted in the loss of a leg and the benefits provided for such loss were as provided in Clause 1 and amounted to $12,-113.18. He also claims the record showed an overpayment to the plaintiff in the sum of $2535.71.

Mr. Copps further testified that he had no knowledge of this letter by Mr. Hagerty nor of any offers to plaintiff for payments of partial disability; that Mr. Hagerty had a misunderstanding of the policy and perhaps did not realize what had been paid before. Thus, Mr. Copps claims that the continued payments after requirements of Clause 1 had been satisfied, were made without knowledge of the defendant's rights to withhold them and without any intention of waiving any provisions of the policy. Such payments cannot be held to prove payment for total disability. Neither are they an admission, waiver or estoppel of any rights of the defendant.

It has been held that payment of indemnities is not proof of the disability in Forman v. Prudential Insurance Co. of America, 310 Mich. 145, 16 N.W.2d 396. In Eller v. Paul Revere Life Ins. Co., 228 Iowa 1247, 291 N.W. 866, 872, the court decided that such payment was not "an express or inferential admission of such disability. There was no element of estoppel in such payment." In Smith v. Penn Mut. Life Ins. Co. of Philadelphia, 233 Iowa 340, 7 N.W.2d 41, 44, it was held that such payment for 11 years and 4 months, "was no foundation for any presumption of fact based thereon."

Plaintiff further claims that the following statement on the checks used by the defendant in making the payments supports his claim that they were made for total disability. That statement is: "This check is in part payment of indemnities of the policy No. 233,074–S on account of sickness or accidental injuries sustained on or about 1–19–48 as shown below." There is no evidence of what is "shown below," and the final $800 check did not include that phrase, "as shown below." The statement does not show under what terms of the policy the payments were made. They could apply to payments under any clause of the policy.

Moreover, to make the payments applicable under Clause 2 necessitates a change in the terms of the policy. Clause 1 is the only clause in the policy that provides for the payment for loss of a leg. Clause 2 expressly excludes payment for the loss of a leg. To make the payments come under Clause 2 both clauses had to be changed. Such changes in the policy cannot be made without the making of a new agreement to that effect unless the defendant has waived the terms of the policy or is estopped from claiming that under Clause 2 payments were made. No such new agreement is claimed and no waiver or estoppel has been shown.

In Kinard v. Mutual Benefit, Health & Accident Ass'n, D.C., 108 F.Supp. 780, 785,

somewhat the same situation arose as in the case at bar. The plaintiff was struck by an airplane propeller and lost one eye. Part A of the policy provided for payment of $1500 for the loss of an eye "in lieu of all other indemnity." Defendant, however, with knowledge of all the facts commenced payment of $200 a month under Part C which provided that, if the insured, because of such injuries, which do not result in any of the specific losses, shall be wholly and continuously disabled, the defendant would pay indemnity at the rate of $200 a month. Defendant kept up those $200 payments for 18 months and then ceased making such payments. Suit was brought to enforce continuation of the payments and it was claimed that defendant had waived any defense based on the specific payments provided for in Part A of the policy. The court said: "While it is true that the insurer may waive a forfeiture, it is equally true that waiver or estoppel may not be successfully urged as a method of bringing within the terms of the policy risks expressly excluded therefrom, or as a means of extending the coverage of the policy." In support thereof the court cited American Casualty Co. v. Harrison, D.C.W.D.Ark., 96 F.Supp. 537, 550, as follows: "And, as to the contention of waiver and estoppel, it is settled in Arkansas that waiver and estoppel are not available to bring within the coverage of the policy risks not covered by its terms, or risks expressly excluded therefrom." The court found that the payment by the defendant under Part C for 18 months without insisting that its sole liability was that provided in Part A did not amount to waiver or estoppel nor affect a change in the terms of the policy. See also 29 Am.Jur. Insurance, Section 903, p. 690.

In Bower & Kaufman v. Bothwell, 152 Md. 392, 136 A. 892, 894, 52 A.L.R. 158, the question raised was whether there was a waiver of the failure of the policy to provide indemnity for losses from a strike. The court held:

"The waiver argued for would be, in effect, an extension of the contract beyond its defined limits, or a new contract. Such an extension would, at least, we think, require an estoppel, if not a new consideration, to support it. Wheeler v. United States Casualty Co., 71 N.J.L. 396, 59 A. 347; Draper v. Oswego County Fire Relief Ass'n, 115 App.Div. 807, 101 N.Y.S. 168. And see Johnson v. Hines, 61 Md. 122, 130. There is no element of estoppel here, as the insured took no action, or placed themselves in no position, in reliance upon the first attitude of the insurer, so that they would now be prejudiced by an abandonment of that attitude. And there was no new consideration for extension of the scope of the insurance."

■ We have concluded that under the policy plaintiff's losses were indemnified only under Clause 1 of the policy and that no waiver or change of any terms in the policy are proven. Neither is any estoppel established. We must then consider what, if anything, is now due plaintiff under the terms of Clause 1.

Plaintiff was injured on Oct. 8, 1948; his original claim stated that he became totally disabled immediately following the accident to carry on the work of his occupation of store-keeper. Defendant, therefore, commenced the payment of $50 per week as provided in the policy. Plaintiff was immediately taken to a hospital. The doctors at first tried to save his leg but osteomyelitis developed in the bone. In an endeavor to check that, his leg was amputated six inches below the knee on Sept. 7, 1950. He thus lost a foot. The defendant kept on paying the $50 weekly indemnity but there was no evidence whether that was paid for the loss of the foot or for the disability which continued. The plaintiff claims that the inference from the actions and payments by the defendant showed it was paying for total disability. The illness resulting from the injury to his leg continued. In another effort to stop that his leg was again amputated on Sept. 23, 1950, 3½ inches below the knee. That, however,

made no change in plaintiff's rights. It amounted still to the loss of a foot. Nor does it seem to have made any change in the methods of payment. The plaintiff's disability continued. Then on Sept. 10, 1952, the leg was amputated five inches above the knee. That was classified as the loss of a leg.

Clause 1 provides that if the insured is disabled within 90 days from the accident and such continuous disability shall result in any of the losses specified, *"the company will pay the amount set opposite such loss and in addition thereto a weekly indemnity from the date of the accident to date of such loss."* Amongst the losses so specified are the loss of a foot, 100 weeks indemnity, the loss of a leg, 132 weeks indemnity. Then the policy provides that if one or more losses enumerated shall result from one accidental injury *"the company will pay only for the loss for which the largest amount is specified."* In the case at bar the defendant lost both a foot and a leg but the largest benefit specified is for the loss of the leg. (Emphasis supplied.)

We interpret these provisions in Clause 1 when applied to the evidence in the case at bar to mean that plaintiff is entitled to 132 weeks indemnity for the loss of his leg and a weekly indemnity from the date of the accident to the date of such loss. The payments made after the loss of the foot must be applied as payments for disability, not as payments for the loss of the foot, and plaintiff was entitled to his 132 weeks indemnity after the loss of the leg.

It is our duty to construe and enforce the contract in accordance with the terms in which it is written. 44 C.J.S. Insurance § 290, p. 1139. The object of the policy is to provide indemnification to the insured and it must be construed liberally to that effect. If there is any doubt in the language that must be construed against the insurer who prepared the contract. 44 C.J.S. Insurance § 297 a, p. 1165.

Construing these provisions as above indicated we find that the plaintiff, under the evidence, is entitled to indemnity as follows:

| | |
|---|---|
| For Hospital indemnity under Clause 7, | $448.89 |
| For surgical indemnity under Clause 6, | 100.00 |
| Indemnity at $50.00 per week from the date of the accident to the loss of the leg, under Clause 1, | 10,000.00 |
| For 132 weeks indemnity at $50.00 weekly after the loss of the leg under Clause 1, | 6,600.00 |
| Total amount of defendant's liability to the defendant, | $17,148.89 |

Mr. Copps, however, testified that the defendant made payments as follows:

| | |
|---|---|
| For Hospital indemnity, | $448.89 |
| For surgical indemnity, | 100.00 |
| Indemnity under Clause 1 from the date of the accident to the loss of the foot, | 4971.43 |
| Indemnity for 132 weeks after the loss of the foot and leg together, | 6,600.00 |
| Total for which the defendant admits liability, | $12,120.32 |
| Claimed overpayment, | 2,535.89 |
| | $14,648.89 |

Thus the defendant, instead of paying weekly indemnity to the date of the loss of the leg, during which time he was disabled, paid it only to the date of the loss of the foot and attempted to figure the 132 weeks due for the loss of the leg from that date. The defendant, therefore, is liable to the plaintiff for the difference between $17,148.89 and $14,648.89 or $2,500. For that plaintiff is entitled to judgment, together with 4 per cent interest on each weekly payment from the time it should have been paid.

The judgment of the district court is reversed and the case remanded to the district court for the entry of judgment in accordance herewith.

MORRIS, SATHRE, JOHNSON and BURKE, JJ., concur.