THE SOUTHERN COTTON OIL COMPANY, Respondent, *v.* THE PRUDENTIAL FIRE ASSOCIATION of New York, Appellant.

*Fire insurance policy — provisions therein as to ownership — effect of a change in the ownership.*

A fire insurance policy contained the words: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership."

*Held,* that such sentence related to the ownership of the subject of the insurance at the date of the policy, and not to subsequent changes in the ownership thereof.

Such policy also contained a provision that "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if any change other than by the death of an insured take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured, or otherwise."

*Held,* that the word "interest," as therein used, was broader than the word "title," and embraced both legal and equitable rights in the property insured;

That, if there was a change in the interest of the insured in the subject of the insurance, a recovery could not be had under the terms of the policy upon the destruction by fire of the insured property.

APPEAL by the defendant, The Prudential Fire Association of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 11th day of December, 1893, upon the verdict of a jury directed by the court after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 14th day of December, 1893, denying the defendant's motion for a new trial made upon the minutes.

This action was begun July 23, 1891, to recover on a policy of insurance, executed September 26, 1889, by which the defendant insured the plaintiff against loss by fire in the sum of $5,000 on its cotton seed oil stored in its tanks at Atlanta, Georgia, for one year from noon September 19, 1889, until noon September 19, 1890. The policy contains the following clause, over the construction and effect of which this litigation arises :

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void   *   *   *   if the interest of the insured be other than unconditional and sole ownership ;   *   *   *   or if any change other than by the death of an insured take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured, or otherwise."

In June, 1890, the plaintiff contracted to sell to Armour & Co., Chicago, a large quantity of cotton seed oil at an agreed price per gallon, to be delivered at Chicago, freight paid, with the right of the purchaser to inspect and reject in case the quality of the oil tendered was inferior to the grade of oil contracted to be sold.   Part of this oil was delivered.   On the 11th of June, 1890, the plaintiff had not delivered 104,980 gallons of the oil contracted to be sold, and on that day it executed and delivered to Armour & Co., Chicago, four receipts, of which the following is a copy, except as to quantity and number of tank in which the oil mentioned in the receipt was stored :

"Receipt No. 1.                    ATLANTA, GEORGIA, *June 11th*, 1890.

"We have in store and will hold subject to the order of Armour & Company, Chicago, Illinois, 23560 gallons Prime Summer Yellow

Cotton Seed Oil, stored in tank No. 1 in Oil House of Southern Cotton Oil Company, Atlanta, Georgia.

> "THE SOUTHERN COTTON OIL COMPANY,
>
> "By L. W. Haskell, *Manager.*
>
> "Insured under our policy,
>
> "THE SOUTHERN COTTON OIL COMPANY,
>
> "Alan H. Harris, *Treasurer.*"

Receipt No. 2 was for 23,560 gallons stored in tank No. 2; receipt No. 3 was for 23,560 gallons stored in tank No. 3; receipt No. 4 was for 34,300 gallons stored in tank No. 4; the total quantity of oil mentioned in the four receipts being 104,980 gallons.

On the 13th of June, 1890, the plaintiff mailed these receipts to Armour & Co., and drew a sight draft on them for $28,479.88, the price agreed to be paid for the 104,980 gallons, less freight from Atlanta to Chicago, which draft was paid.

Between the date of these receipts and July 10, 1890 (the date of the fire), 1,608 gallons of oil were added to each of the tanks numbered 1, 2 and 3, and 43,904 gallons of oil to tank No. 4, making 48,728 gallons of oil added to the four tanks between the date of the receipts and the date of the fire.

July 10, 1890, 198,546 gallons of refined cotton seed oil of the value of $56,585.61, and 1,186 gallons of crude cotton seed oil of the value of $2,217.20 were destroyed by fire, making the total loss on oil $58,802.81. The refined oil was stored in tanks numbered from 1 to 5 inclusive and in two clarifying tanks. The crude oil was stored in tank No. 6, and in two refining tanks.

September 30, 1890, the plaintiff repaid Armour & Co. the price of the oil, $28,479.88.

The litigants have stipulated that in case the plaintiff is entitled to recover for all of the oil burned in tanks Nos. 1 to 4 inclusive — 153,708 gallons — that its recovery will be $5,071.71, with interest, or in case the plaintiff is not entitled to recover for 104,980 gallons represented by the receipts given Armour & Co., but is for the remainder — 48,728 — (153,708 minus 104,980 equals 48,728) that it is entitled to recover $3,025.91.

*John E. Parsons,* for the appellant.

*W. W. MacFarland,* for the respondent.

Follett, J. :

The sentence "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void  *  *  * if the interest of the insured be other than unconditional and sole ownership," relates to the ownership of the subject of the insurance at the date of the policy and not to subsequent changes of ownership.   When the policy was issued the insured was the unconditional and sole owner of the oil insured and burned, and the policy was not void, but took effect as a legal contract.   The sole question presented by this appeal is, did the contract between the plaintiff and Armour & Co. annul, in whole or in part, the policy?   The question arises under the following clause of the policy: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void  *  *  * if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured, or otherwise."

The important words in this sentence are "possession," "interest" and "title."

The defendant does not assert that there was any change in the possession of the oil.

The word "interest" is broader than "title," and embraces both legal and equitable rights in the oil, and if there was a change "in the interest" of the insured in the subject of the insurance the plaintiff cannot, under the terms of the policy, recover for its loss.

In the letter of June 7, 1890, written by the plaintiff's president to Armour & Co., he stated: "We have been letting the oil at Atlanta remain in tanks, as it is improving daily in its condition, and we will be glad to accommodate you and let it remain there until you may want it — say for the next sixty days — without storage charge, provided it is at your risk and insurance expense.   We have some obligations to meet and we want funds for this oil for that purpose.   If it is satisfactory to you we will draw with warehouse receipt attached and covered under our policies as to fire risk, or have the fire insurance policy made in your name as you may elect.   Please wire if this is satisfactory.   It would be entirely agreeable for us to draw for say fifteen tanks next week and the

balance early the week following. *We can designate same, giving you number of tank in which the oil is stored. We will have no other oil there but the lot sold you.*"

On the tenth of June Armour & Co. replied to this letter by a telegram, saying : " You can draw for balance of oil due without any additional expenses and we will take as soon as possible."

On the 11th of June, 1890, Armour & Co. wrote in reply to plaintiff's letter of June seventh, saying : " We will honor your draft with warehouse receipts for the oil and send our cars for same as soon as possible. In the meantime same to be stored and insured free of expense."

The plaintiff's president, in his testimony, gave his own construction of the meaning of the term " your risk and insurance expense." He testified it meant " risk of leakage, risk of deterioration in quality sometimes. If you keep it a certain time it oxydizes and becomes rancid, sometimes in stress of weather or what not it deteriorates. Any gentleman will understand that, and that is what we mean in that sense of risk. * * * That is the technical term used, at your risk ; and we say buyers' expense of insurance we mean he takes the fire risk and pays for the insurance." The president of the plaintiff also testified that when the receipts were issued they embraced all the oil then in the tanks. In the letter of June seventh he wrote : " We can designate same giving you number of tank in which the oil is stored. We will have no other oil there but the lot sold you." Under this correspondence and the receipts, taken in connection with the fact that this oil was paid for, it seems to us that Armour & Co. acquired an interest in the oil stored in those tanks ; that the plaintiff became the trustee of Armour & Co., who acquired not only an insurable interest in this particular oil, but such an interest as would have entitled them, in case the plaintiff had failed, to have taken the oil from its receiver or assignee.

The previous dealings between the plaintiff and Armour & Co. might be important to aid in the interpretation of an ambiguous contract, but the definite agreement made on this occasion, which is evidenced by the receipts, the letters and telegrams, cannot be controlled or limited by the former contracts and course of dealing between the parties.

The mere fact that Armour & Co. had the right to inspect and reject, any oil tendered by the plaintiff at Chicago, did not deprive them of an interest in the oil stored in the four tanks.

It seems to us that there was a change of interest, not only in the 104,980 gallons represented by the receipts, but in all the oil contained in the tanks at the time of the fire. When the policy was issued the insured owned every gallon stored in the four tanks, but at the time of the fire it had ceased to be the owner of any particular part of the oil. It was the fault of the plaintiff that other oil was added to those tanks between the date of the receipts and the fire, and was in violation of its letter of June seventh, in which it said: "We will have no other oil there but the lot sold you." The plaintiff is not entitled to recover for the loss occasioned by the destruction of any part of the 153,708 gallons of oil burned.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment reversed, new trial granted, costs to appellant to abide event.