## INSURANCE CO. OF NORTH AMERICA v. O'BANNON. (No. 7174.)†

(Court of Civil Appeals of Texas. Dallas. Oct. 17, 1914. Rehearing Denied Nov. 28, 1914.)

1. INSURANCE (§ 328*) — FORFEITURE — TITLE OR INTEREST OF INSURED—CONSTRUCTION.

In a policy insuring a dwelling house, the provisions that it should be void if the interest of the insured was other than an unconditional and sole ownership, or if the dwelling was on ground not owned by the insured in fee simple, referred to the date of the issuance of the policy and not to subsequent changes in the title or ownership, so that it was not avoided by a subsequent sale of the ground on which it stood, and the divestiture of insured's title thereto.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 794–822, 825; Dec. Dig. § 328.*]

2. INSURANCE (§ 146*) — CONSTRUCTION AGAINST FORFEITURE—STANDARD POLICY.

Where any reasonable construction can be placed on provisions of an insurance policy that will prevent a forfeiture, that construction should be adopted, and the rule applies as well to standard policies.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294–298; Dec. Dig. § 146.*]

3. INSURANCE (§ 328*)—FORFEITURE—CHANGE OF TITLE OR INTEREST—CONSTRUCTION.

Insured obtained a policy on his dwelling providing that it should be void upon any change in his interest or title in it by voluntary act or otherwise, and thereafter conveyed the land by warranty deed, without express reservation of title to the dwelling, and received from the grantee a writing stating that the insured should have the right to the dwelling and a reasonable time to remove it, not extending beyond February 1, 1913; the balance of the consideration to be paid upon its removal. Thereafter and before the time fixed for removal it was burned. Held, that while insured's title to the dwelling was conditional upon removal within the time fixed, and he had no title after such time, yet, on the facts, there was no forfeiture, since the object of such provision was to avoid the policy upon any change of interest giving insured a greater temptation to destroy it or less interest and watchfulness in protecting it, and the change, if any, in his interest or title was not of such a character; and since the provision as to payment of the balance on removal left him the owner whether it was removed by him or by the grantee, and merely guaranteed removal within the time fixed or reimbursement to the grantee for any expense of delay in removal.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 794–822, 825; Dec. Dig. § 328.*]

Error from District Court, Grayson County; W. J. Mathis, Judge.

Action by R. A. O'Bannon against the Insurance Company of North America. Judgment for plaintiff, and defendant brings error. Affirmed.

Locke & Locke, of Dallas, for plaintiff in error. Jones & Hassell, of Sherman, for defendant in error.

TALBOT, J. R. A. O'Bannon brought this suit against Insurance Company of North America to recover $1,245.42 under a fire insurance policy issued by the defendant in his favor on a one-story frame dwelling in the city of Sherman, totally destroyed on January 17, 1913. The policy was for $1,300, but by a partial fire loss occurring in November, 1912, had been reduced to the amount mentioned. The company defended on the ground that certain conditions of the policy had been breached by a sale of the property to the trustees of the independent school district of the city of Sherman on December 26, 1912, 22 days before the fire, and that the plaintiff's loss was less than the amount claimed. The plaintiff alleged a waiver by the local agent. The court refused to permit any inquiry into the amount of the plaintiff's loss. At the conclusion of the evidence the defendant requested a peremptory instruction in its favor, which was refused, and the defendant excepted. Thereupon the court peremptorily instructed a verdict for the plaintiff, and, such verdict being returned by the jury, judgment was entered thereon in favor of the plaintiff for $1,264.10. The defendant moved for a new trial. The motion was overruled, and the defendant thereupon prosecuted a writ of error to this court for the revision of the judgment.

There is little or no dispute about the facts. The defendant in error, O'Bannon, acquired the land with the dwelling situated thereon about 1908. The policy of insurance sued on was issued January 7, 1912, for a period of three years. The dwelling insured was destroyed by fire January 17, 1913. About a year before the fire the trustees of the independent school district of the city of Sherman desired additional ground for school purposes. Several sites were considered, and, among others, the plaintiff's property. Negotiations with him were then begun for the purchase of his property, and after they had developed favorably plaintiff was cautioned not to disclose it. To this he agreed. On December 26, 1912, the plaintiff and his wife delivered to W. H. Lucas, G. S. Ellis, J. F. Holt, R. G. Piner, R. E. Strange, H. O. Harrington, and Silas Hare, as trustees of said independent school district, and to their successors in office for the use and benefit of the public free school of said city of Sherman, a general warranty deed to the property in question. There was no express reservation in this deed of conveyance of the house covered by the policy in suit or other improvements situated on the land, but upon the delivery of the deed the secretary of the trustees of said independent school district or school board delivered to the plaintiff in part payment for the property a warrant for $4,500 and a written instrument as follows:

"The State of Texas, County of Grayson.

"Whereas, by deed of this date R. A. O'Bannon and Annie O'Bannon conveyed certain property, fully described in said deed, to W. H. Lucas, G. S. Ellis, J. F. Holt, R. G. Piner, R. E. Strange, H. O. Harrington and Silas Hare, trustees of the independent school district of

the city of Sherman, Grayson county, Texas; and

"Whereas, the consideration recited in said deed is a cash consideration of nine thousand dollars, and the grantors in said deed therein acknowledge full payment of said amount; and

"Whereas, the contract and understanding actually made and had between the grantors and grantees in said instrument was that the grantors should have the right to retain all buildings on said premises and should have a reasonable time to remove them therefrom and that the sum of forty-five hundred dollars should be paid to the grantors by the grantees upon delivery of deed and the remainder when said buildings should be removed, it not being desired to encumber said deed with said qualifications:

"Now, in consideration of the premises this instrument is executed for the purpose of evidencing such facts, and it is here recited that, notwithstanding the recitations in said deed, but the sum of forty-five hundred dollars is and was paid upon the delivery of said deed, and the remaining forty-five hundred dollars shall be paid to said grantors upon the removal of said buildings from said premises, to do which they shall have a reasonable time, but in no event to be longer than 1st day of February, 1913.

"Witness our hands this December 26, 1912.

"R. G. Piner, Secretary.'

"R. A. O'Bannon,

"Annie O'Bannon,

"By J. W. Hassell, Agent."

At the time of the fire, the house had not been removed from the land described in the deed of plaintiff and wife to the school trustees, but was destroyed while situated thereon. In reference to what had been done towards its removal, the plaintiff testified, so far as is material, as follows:

"At the time of the fire no work had been done towards the removal of the house from the ground on which it was situated with reference to the house itself, except that the price was agreed on with the house moving contractor in reference to moving the house to a certain lot; the price had been agreed upon for placing one or two sections of the house on a lot, and some figures discussed in reference to moving a section to a lot, the choice of which was in abeyance between my wife and myself. As to whether a contract had been entered into for moving the house, will say, a contract to this effect was made. The man was to come Monday morning following the fire (which occurred on Friday), and put the house on rollers and make his preparatory moves, and we were to decide by the time he got the house to the property line where to place it. I was in correspondence with a number of heirs for a piece of property near there, and had drawn a contract and submitted it to them for their signature under which they were to allow me to place the house on their property under certain conditions—that I was to move it off if I did not buy. A death in the family had disturbed their affairs, and they did not know where they were. I could not get anything definite about it, and was going to put the house there. and chance it. The man was to put the house on rollers the Monday following the fire to clear the lot as soon as possible. At the time of the fire I had in mind two locations to which the house might be moved. One was the one involved in this heirship. I had not actually decided to which one I would move it. I had not entered into a written contract or an oral contract for the removal of it to either one of those places. We had submitted a contract to the heirs with reference to that property on which

we desired to place the house. It was our first choice. I had sent to them a form of contract. That contract had not been signed. That contract was never returned to me signed. It had probably been on the road a couple of days when the fire occurred. The matter was dropped and nothing done with it. I had a telegram from one party showing a divergence of opinion between the heirs as to what their action would be in reference to it. As to whether I was going to take some chances on removing the house on the land, will say, I want to answer that question fully. It calls for another answer. I would like to leave out the word 'chance.' Unless I had a contract with the parties, I would not put the house on the property. I had other arrangements if they failed, even though the house was on rollers."

The policy sued on contains, among others, the following provisions:

"This entire policy * * * shall be void * * * if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple; * * * or if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the insured, or otherwise."

The plaintiff in error contends: (1) That the effect of the three provisions of the policy quoted above is such that the policy is void if at the time of the fire the ground on which the dwelling stood was not owned by the plaintiff in fee simple, or if the plaintiff's interest in the dwelling was not the sole and unconditional ownership thereof; (2) that the undisputed evidence showed that after the policy issued a change occurred in the interest, title, or possession of the insured in the "subject of insurance," whereby he ceased to own in fee simple, or otherwise, the ground on which the dwelling stood, and for that reason the policy was void; (3) that the undisputed evidence showed that a change occurred in the interest or title of the insured in the dwelling whereby such interest or title became and remained to the time of the fire other than the unconditional ownership thereof, and for that reason the insurance ceased and the plaintiff cannot recover.

[1] On the other hand, the defendant in error contends that the first two provisions of the policy, the one declaring that the "entire policy, shall be void if the interest of the insured be other than unconditional and sole ownership," and, the other, that the policy shall be void "if the subject of insurance be a building on ground not owned by the insured in fee simple," have reference to the date of the contract of insurance, and not to any subsequent date, and that while the third, to the effect if any change, other than by the death of the insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard), the policy should be void, relates to changes subsequent to the date of the policy, yet no change in plaintiff's interest, title, or possession of the sub-

ject of insurance, namely, the dwelling insured, took place by reason of the transaction in question, or that no such change therein occurred that worked a forfeiture of the policy. There are decisions both ways on the question, but we prefer to follow those holding that the two first provisions referred to relate to the ownership of the property at the date of the issuance of the policy, and not to subsequent changes in the title or ownership. This we regard as a reasonable construction of the language of said first two provisions of the policy, and that such was understood to be their meaning by the parties is made clear, it seems to us, by the third provision or condition which provides for the effect of future changes in the title. That the first two provisions refer to the present and not to the future, and relate to facts as they exist at the date of the policy, is affirmed, among others, by the following authorities: Collins v. London Assur. Corp., 165 Pa. 298, 30 Atl. 924; Rosenstock v. Mississippi Home Ins. Co., 82 Miss. 674, 35 South. 309; Southern Cotton Oil Co. v. Prudential Fire Ass'n, 78 Hun, 373, 29 N. Y. Supp. 128; Parsons, Rich & Co. v. Lane (In re Millers & Mfrs. Ins. Co.) 97 Minn. 98, 106 N. W. 485, 4 L. R. A. (N. S.) 231, 7 Ann. Cas. 1144.

The more difficult question, and the one which has given us some trouble, is whether or not there was such a change, subsequent to the issuance of the policy sued on, in plaintiff's interest or title to the dwelling insured, as avoided the contract of insurance. That the insurance did not cease because of the sale of the ground on which the dwelling stood and the divestiture of plaintiff's title thereto, we are fully persuaded. The question then is: Did any such change take place in the plaintiff's title to or interest in the dwelling covered by the policy of insurance issued to him by the transaction in question, as forfeited his rights under said policy?

[2] The rule is almost, if not quite, universal, that if any reasonable construction can be placed on provisions of an insurance policy such as those under consideration that will prevent a forfeiture, such construction should be adopted. Of course, the court should not, and will not, "by a strained construction engender a doubt, and then resolve it against the insurer." The rule of construction referred to applies, it seems, to the modern standard policy. It is so stated by Mr. Vance in his work on Insurance, at page 430. He says:

"It has been contended that inasmuch as the law compels the use of the standard policy, and will not allow any variance from it, excepting in certain limited particulars, the insurer cannot be regarded as selecting the terms of the contract and subjected to an unfavorable rule of construction on that account. This contention, however, has been held to be without merit, for the terms of these statutory policies were chosen with reference to the construction

170 S.W.—67

given by the precedent cases to similar terms in other policies, and therefore ought to be regarded as being used in the sense of their previous construction. It is also apparent from an examination of the instruments themselves, as well as the history of their adoption, that their terms were really chosen by the underwriters, with particular reference to their own interests."

And so in this connection, and as applicable to such a policy, he states that "any doubtful terms are always construed in favor of the insured."

[3] The deed executed and delivered by the plaintiff and wife to the trustees of the independent school district of the city of Sherman when read and construed, as it must be, in connection with and in the light of the contemporaneous instrument executed by the parties and set out above, operated, as a conveyance only of the ground on which the dwelling insured was situated; the said dwelling by the terms of said contemporaneous instrument being reserved by plaintiff. But it is expressly provided in said instrument that the insured building shall be removed from the premises within a reasonable time, and not later than February 1, 1913. As has been shown, the dwelling of the defendant in error was destroyed by fire on January 17, 1913, a short time before the expiration of the time limit for its severance or removal from the ground sold, and the insurance company asserts that under the well-settled law as applied generally to such contracts his title to the dwelling was contingent upon its removal from the premises by February 1, 1913, and therefore during the life of the policy a change in his title from that of unconditional to conditional occurred which vitiated the insurance. In support of this theory, a few cases in which the question has arisen with respect to buildings, and many in which it arose with respect to standing timber, have been cited, wherein it was held that the title in such cases is conditional upon removal by the date stipulated in the contract; that is, that no right or title exists in the grantee, or person reserving the buildings or timber, after the expiration of the time specified in the deed or contract. It is conceded, however, that the decisions are not uniform on the subject, but, admitting such to be the rule according to the weight of authority, we are not prepared to say that it should be enforced under the facts of this case and plaintiff's policy declared forfeited. As declared in Ayres v. Hartford Fire Ins. Co., 17 Iowa, 176, 85 Am. Dec. 553, cited by the plaintiff in error, and other cases:

"The object of the insurance company by this clause (namely, providing against change of interest, title, etc.) is that the interest shall not change so that the assured shall have a greater temptation or motive to burn the property, or less interest and watchfulness in guarding and preserving it from destruction by fire. Any change in, or transfer of the interest of the assured in the property of a nature calculated to have this effect is in violation of the policy."

And it logically follows that the converse of this proposition is true; that is, if the change in the interest or title of the assured in the property is not of a nature calculated "to increase the motive to burn or to diminish the motive to guard the property from loss by fire, the policy is not violated." Was the change, if any, in the interest or title of the plaintiff in the dwelling insured by the defendant company, of such a character as to place him under a greater temptation to burn it or to lessen his interest and watchfulness in guarding and preserving it from destruction by fire? This question, we think, should be answered in the negative, and our reasons for declaring that such should be the answer are fairly expressed in the case of George Fletcher v. Commonwealth Insurance Co., 18 Pick. (Mass.) 419. In that case the plaintiff obtained insurance against fire on his storehouse without disclosing the fact that it stood on land of another person under an agreement terminable, at the pleasure of such person, upon six months' notice. There was no inquiry made by the insurers of the plaintiff in regard to his title. The question was whether or not the plaintiff, by his failure to inform the insurance company that his building stood on land of another and the nature of his tenure, concealed from it facts material to the risk. In holding against this view the court, among other things, said:

"Now it is contended the land belonged to another, that there was a right reserved for the owner to cause the plaintiff to remove his store in a certain time, and, as his tenure was such, he would be less careful of the property and so the risk would be greater than it would be if the plaintiff owned the land as well as the building. We think this is more ingenious than substantial. If in truth the plaintiff owned the land upon which his building stood, it might be that he wished to have a new framed store instead of the old one, and it would be within the region of possibility that he would not be so likely to take as good care of the old one as he would if it were a new one; and he might honestly omit to state his desire to substitute a new store for the old. But such a suggestion of such an omission, although quite as likely to affect the risk, could not be a foundation sufficient to support a verdict avoiding the policy for concealment."

So, in the instant case, for like reasons, it may be said, we think, that the contention of the insurance company to the effect that the sale of the land on which plaintiff's dwelling stood, with a reservation of the dwelling under an agreement to remove it from the land within a specified time, subjected him to a greater temptation or motive to burn the house or cause him to have less interest in preventing the destruction of it by fire, "is more ingenious than substantial"; more imaginary than real.

But the defendant in error contends, in effect, that though it is the general rule in contracts of the kind under consideration that the right to the buildings is lost upon failure to remove them within the time fixed the parties may contract otherwise, and that they have done so in this instance. The proposition of law here asserted is a sound one and applicable, we are inclined to think, to the facts of this case. The consideration expressed in the deed from plaintiff to the school trustees is. $9,000 paid and received, but the collateral contract by which the plaintiff excepted from said deed the improvements situated on the land conveyed stipulated not only that the plaintiff reserved the insured building and that he must remove it from the premises by February 1, 1913, but declared in effect that, notwithstanding the recitation in the deed to the contrary, only $4,500 were in fact paid upon the delivery of said deed, and that the remaining $4,500 of the purchase money should not be paid until the removal of the building from the land. Evidently, the withholding of the payment of this amount of the purchase money of the land until the severance of the buildings therefrom and the recitation of such agreement in the collateral contract was not for the purpose of evidencing a purchase partly for cash and partly on a credit for the short time fixed for the removal of the building; but manifestly, we think, such action was taken by the parties to guarantee the removal of the buildings by the plaintiff within the time agreed on, and, in the event of his failure to do so, to furnish the school trustees ample security or means for reimbursing themselves for any outlay or expense they might be put to in having the buildings removed, and for recouping themselves as such trustees in damages for the delay occasioned in the removal of said buildings. If this was the intention of the parties, and clearly it was, it evidences the fact, as argued by plaintiff's counsel, that notwithstanding the stipulation that plaintiff was to remove the buildings by the 1st of February, 1913, and its legal effect, standing alone, if such it was, to change plaintiff's unconditional ownership of the dwelling to a conditional or defeasible one, the buildings were not to revert and become as a part of the realty the property of the school trustees. The evidence is clear and uncontroverted that the buildings situated on the land were not wanted by the school trustees and regarded by them as an incumbrance and detriment to the interest of the school they represented, and that they, as trustees, or otherwise, were in no event to become the owners of said buildings, but that they were in all events to be removed from the land. It follows that no change in plaintiff's interest in or title to the dwelling insured occurred after the issuance of the policy sued on, and that he was the unconditional and sole owner of it at the time of its destruction by fire, for by a fair and reasonable construction of the contract he was to remain the owner of the dwelling insured, whether removed by him or the school trustees. This

effectually disposes of the appeal, and neither the question of the insufficiency of the evidence to raise an issue of waiver presented in appellant's brief, nor any other question discussed by counsel, need be noticed.

Our conclusion is that the proper judgment has been rendered in the case, and it is affirmed.

Affirmed.