BOWER & KAUFMAN *v.* JAMES W. BOTHWELL ET AL., RECEIVERS.

*Strike Insurance—Construction of Policy—Cessation of Work —Extension of Meaning of Policy—Waiver of Inapplicability.*

A refusal of the employees to return to work at reduced wages, after the factory had been closed by the employers for a month, was not a "cessation of work by a part or all of the employees" within the meaning of a strike insurance policy.    pp. 394-396

A certain class of workers in insured's factory, known as "boarders," having remained at work until the other employees refused to return to work, when the boarders ceased work, the loss by the defection of the boarders was within the policy, but the whole loss caused by the closing of the factory after that time could not, in view of the evidence, be imputed to this action of the boarders.                    pp. 397, 398

Except to the extent that there may be some legal prohibition, the parties are entitled to fix their own rights and obligations, in an insurance policy as in any other contract.        p. 396

A construction of a strike insurance policy as covering losses from the refusal of employees to return to work, after the fac-

tory had been closed for a month by the employer, was not shown by the insurer's acceptance of proofs of loss and payments by it on such losses, this being followed by a denial that the policy covered such losses, based ostensibly on information newly obtained that the factory had been closed by the employer. p. 396

A waiver of the inapplicability of a policy to particular losses involves in effect an extension of the contract beyond its defined limits, or a new contract, and this requires an estoppel, if not a new consideration, to support it. pp. 396, 397

The Court of Appeals cannot consider new evidence, included in the record by agreement after the passage of the order appealed from. p. 397

*Decided March 3rd, 1927.*

Appeal from the Circuit Court No. 2 of Baltimore City (FRANK, J.).

Claim by Bower & Kaufman against James W. Bothwell and others, surviving receivers of the Employers' Mutual Insurance and Service Company. From an order overruling exceptions by the claimants to a disallowance of their claim, they appeal. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Raphael Walter,* with whom were *Sykes, Nyburg, Goldman & Walter,* on the brief, for the appellants.

*Walter L. Clark* and *Roszel C. Thomsen,* for the appellees.

BOND, C. J., delivered the opinion of the Court.

In the distribution of assets of the Employers' Mutual Insurance and Service Company, which had insured its members against losses of profit and fixed charges by strikes, a claim by the appellants for such losses was disallowed by

the auditor, exceptions to the disallowance were overruled by the court, and this appeal is taken from the court's action. The appellants were manufacturers of silk hosiery in Philadelphia, and held a policy for $154,000 insuring them

> "for the actual loss sustained through a strike beginning at any time while this policy is in force, and incurred during a period not exceeding three hundred working days next succeeding the beginning of such strike; at a rate not exceeding $513.33 *per diem,* and not exceeding an aggregate total indemnity of $154,-000 during any policy year.

> "Part 1. Against all direct loss of average daily net profits and fixed charges during the period of prevention of production or operation of the assured's business, in whole or in part, at the plant of the assured * * * caused by a strike of all or part of the employees of the assured.

> "Subject to the following conditions: A. A strike, within the meaning of this policy, is a cessation of work by a part, or all of the employees of the assured as the result of concerted action by such employees; to enforce a demand for higher wages; to secure the redress of a grievance, real or alleged; to utter a protest or to resist a demand or a rule made by the assured; or due to or caused by directions or orders issued by any labor union, or organization of employees, whether of the assured or otherwise."

The question in the case is whether under circumstances to be stated a refusal of the employees to return to work at reduced wages after the factory had been closed by the employers for a month, was such a strike as is defined in the clause last quoted. Was it a cessation of work by the employees, within the meaning of the policy? The insurer accepted proofs of loss, but after having made some payments on the loss, declined further payments because it considered that there had been no strike within the policy, and the auditor and the trial court came to the same conclusion. A majority of this Court agree with that conclusion.

From testimony on behalf of the appellants these facts
appear.   This factory, along with others in an association
of Philadelphia hosiery manufacturers, was operated through
the year 1920 under a wage scale fixed by agreement with
the labor union of which its knitters were members, and this
agreement was to expire at the end of the year.   Because
of a great falling off at that time in the market for manu-
factured products generally, affecting this factory so that
from June to November, 1920, its production fell off to one-
third, the employers decided that there must be a reduction
of fifteen per cent. in wages, and on December 1st, 1920,
they closed the factory because of the trade conditions and
in order "to impress on them (the employees) the condi-
tion as it existed and show them the necessity of accepting
a reduction."   The employees were told that the factory
"would start the first of the year and that until that time
there would be no work for them unless they were sent for."
Shortly after, a notice of the reduction of wages on and after
January 3rd, 1921, was posted in this and similar factories.
On December 31st, 1920, the labor union voted against ac-
cepting the reduction, and the employees remained away on
January 3rd, 1921, and continuously thereafter until the
following October, when nearly all of them returned to
work at their old wages.   Some of them had meanwhile gone
to other employments.   In addition to the knitters there
were finishers employed at this factory, and some of them
worked throughout the year 1921, and among them were
some termed "boarders," who worked during December,
1920, and went out on strike at the first of the next year.

During the nearly ten months of 1921 that the employees
were out, the factory was picketed by some of them, strike-
breakers were persuaded to leave, strike benefits were paid,
conferences were held, and, generally, all the familiar inci-
dents of strikes were present in this case.

But the strike covered by the policy is one specially de-
fined as a cessation of work by the employees, and in the
opinion of a majority of the Court a refusal of the knitters

to return to work, after a month's stoppage of work by the employers, is something other than the cessation of work by employees meant in this policy. The intention of the parties governs, of course; except to the extent, if any, that there might be some legal prohibition, they are entitled to fix their own rights and obligations, in an insurance policy as in any other contract. *Northern Assurance Co. v. Building Association,* 183 U. S. 308.

"Cessation of work" is a phrase with a plain, ordinary meaning, to which the parties are entitled to adhere, and to which the courts must therefore adhere unless it otherwise appears that this ordinary meaning was not intended; and the majority of the judges think there is no such contrary intention manifested.

It is contended that the parties themselves put the opposite construction on the contract of insurance, especially by the furnishing and accepting of proofs of loss, and the pay ments made on the losses incurred by the strike of employees as it actually came about, and that this construction of theirs should be adopted. If this is not true, it is contended that in this acceptance of proofs of loss and the part payments made on the loss, there was a waiver by the insurer of any defense on the limited nature of strike covered by the policy. The facts do not clearly manifest a construction of the policy by the insurer broader than that covered. There was, first, an assumption that the loss from this strike was covered, and, then, a denial that it was covered, based, ostensibly, upon information newly obtained that the factory was closed by the employer a month before the strike. There may have been information in the hands of the insurer which should have come to its attention before making payments, but the two conflicting actions, with the avowal of ignorance of facts at first, seem to us insufficient to constitute a construction of the contract which the court should adopt as the true one.

In considering whether there was a waiver of the inapplicability of the policy to losses from this strike, it is to be

borne in mind that it is not a forfeiture that is to be found
waived, nor a violation of a condition or any irregularity;
it is an inapplicability of the policy, so that the waiver
argued for would be, in effect, an extension of the contract
beyond its defined limits, or a new contract.  Such an exten-
sion would, at least, we think, require an estoppel, if not a
new consideration, to support it.  *Wheeler v. U. S. Casualty
Co.,* 71 N. J. Law, 396; *Draper v. Oswego County Fire Re-
lief Asso.,* 115 App. Div. (N. Y.) 807.  And see *Johnson
v. Hines,* 61 Md. 122, 130.  There is no element of estoppel
here, as the insured took no action, or placed themselves in
no position, in reliance upon the first attitude of the insurer,
so that they would now be prejudiced by an abandonment
of that attitude.  And there was no new consideration for
extension of the scope of the insurance.  In connection with
the question of waiver, we have to consider an agreement of
counsel to add to the record for this court, after the passage
of the order appealed from, letters passing between the par-
ties, in one of which, written in January, 1921, before the
insurer made payments on the loss, and long before it dis-
claimed liability, it was informed that the insured had closed
the factory during the month of December, intending to
reopen on the first of January, when, as they contended, a
strike under the policy began.  In our opinion, we should
be without authority to review the order of the court below
on any new evidence, even when included in the record by
agreement, and when the additional evidence should at a
proper stage of the proceedings be entitled to consideration
upon valid theories of law.  *Kelly v. Nagle,* 150 Md. 125,
141.  But in this particular case, our conclusion is that there
would be no waiver of the right to limit the contract to its
defined scope, even with these letters received to support the
theory of waiver.

The order of court provided that allowance should be
made for any loss which might be found to have been sus-
tained from the cessation of work by the finishers or "board-
ers" who had remained at the factory during the month of

December. This we think proper because these workmen did cease work at the beginning of the strike. But we do not agree with the contention that the whole loss from the closing of the factory after January 3rd, 1921, should be attributed to the cessation of work by the boarders at that time. The loss from the defection of these men, if any, appears to have been a minor one; their work appears to have been auxiliary to that of the knitters. Whatever loss may have resulted from the strike of the finishers can be allowed for fully under the order passed.

*Order affirmed, with costs to the appellees.*

ADKINS, J., dissents.