**TRAVELERS INSURANCE COMPANY,**
a corporation, and the Travelers Indemnity Company, a corporation

v.

**John Carey MILLER and Robert Howard Kerr.**

**Robert H. KERR, Cross-Plaintiff,**

v.

**TRAVELERS INSURANCE COMPANY**
and the Travelers Indemnity Company, Cross-Defendants.

**Civ. A. No. 11479.**

United States District Court
D. Maryland.

Sept. 16, 1960.

Joseph B. Simpson, Jr., Simpson & Simpson, Rockville, Md., for plaintiffs.

William R. Scannell, Beltsville, Md., Albert J. Ahern, Jr. and James J. Laughlin, Washington, D. C., for defendants.

R. DORSEY WATKINS, District Judge.

Plaintiffs, having issued a Garage Liability Policy with the named insured as "Bob's Auto Service, Inc.", have filed a complaint for declaratory relief against the defendants; the necessary jurisdictional requirements being adequately established.

The complaint alleges that at the time of the issuance of said policy, and at the time of the happening of the accident hereinafter mentioned, said named insured was engaged in the automobile garage and repair business in Prince George's County, Maryland, and the defendants, and each of them, at the time of the happening of the accident herein involved, were employees of the named insured. On August 5, 1958, the defendants were required in the course of their employment to complete certain overtime work and at its conclusion were furnished an automobile to be operated by Kerr to take the two defendants to their respective homes. En route for this purpose, an accident occurred, from which defendant Miller sustained bodily injuries. On August 26, 1958, Miller filed a claim for workmen's compensation for these injuries, and on September 10, 1958, the State Industrial Accident Commission determined that Miller sustained an accidental personal injury arising out of and in the course of his employment, and awarded compensation for temporary total disability. Pursuant to said award, the plaintiff, the Travelers Insurance Company, paid the defendant Miller $40 per week beginning August 8, 1958, and sums for medical treatment. Thereafter the defendant Miller filed suit in the Circuit Court for Prince George's County against the defendant Kerr, alleging that the injuries sustained by him on August 5, 1958, were the result of negligence on the part of the defendant Kerr. On the trial of the case the jury rendered a verdict against Kerr in the amount of $19,500 and costs. Miller subsequently made demands upon the plaintiffs to discharge said judgment, and has threatened legal proceedings, including attachment, against the plaintiffs, to collect said judgment.

The Garage Liability Policy defined the insured, and contained certain exclusions, as follows:

"This policy does not apply:

*     *     *     *     *     *

"(d) under Coverage A and division 1 of Coverage C, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured;

"(e) under Coverage A, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law."

Plaintiffs allege that these provisions relieve them of any obligation to discharge the judgment; and that under the provisions of the Workmen's Compensation Law, Code Md.1957, art. 101, § 58, the plaintiff, the Travelers Insurance Company, would be entitled to subrogation and would be entitled to be reimbursed for compensation paid or awarded and for medical and surgical expenses.

Plaintiffs pray for a declaration whether or not the defendants are liable for the judgment in the suit of Miller v.

Kerr; that plaintiffs be exempted from liability for the payment of such judgment; that the defendant Miller be enjoined from instituting any action under the policy, or from enforcing said judgment until the determination of this case; and that if the plaintiffs should be determined liable for the payment of the judgment in the suit of Miller v. Kerr, that the defendant Miller be ordered to reimburse the Travelers Insurance Company, the compensation carrier, for all amounts expended by the plaintiff as such carrier; and that the compensation carrier be subrogated to Miller's rights, to the extent of any compensation liability.

The defendants, by verified answers, controverted much of the complaint, insofar as it alleged the purpose and reason for the use of the car at the time of the accident, and the relationship of the defendants to the insured, and to each other. They alleged as affirmative defenses that plaintiffs had waived any non-coverage within the policy by actively representing defendant Kerr in the suit of Miller v. Kerr, and prosecuting an appeal therefrom; that plaintiffs were estopped to assert non-coverage by their active assumption of defense of said suit, and their failure timely to notify Kerr that they would attempt to disclaim liability. A further defense by way of collateral estoppel was asserted on the ground that the issues as to whether Miller was within or outside the scope of his employment at the time of the collision and whether, in fact, his employer was Kerr as the Travelers Insurance Company argued before the jury or was the named insured, Bob's Auto Service, Inc., had been raised in the Miller v. Kerr litigation by, and adversely decided against, the now instant plaintiffs. As a final defense it was alleged that plaintiffs improperly tried the Miller-Kerr case through the introduction of issues unnecessarily prejudicial to their insured and through plaintiffs' failure to prosecute the appeal on insured's behalf thus giving rise to a separate estoppel against plaintiffs.

Defendant Kerr cross-claimed [so denominated, the pleading being really a counterclaim] against the plaintiffs, praying that the court enter declaratory judgment that plaintiffs had waived any and all defenses of non-coverage; and that plaintiffs be required to pay Miller's judgment subject to reimbursement of workmen's compensation liability.

A motion for summary judgment against the plaintiffs on their claim, and for the defendant Kerr on his counterclaim, was filed by defendant Kerr, with supporting affidavits, the motion reciting that defendant "initially desires to state that this motion for summary judgment is premised upon the theory most favorable to the plaintiffs; namely, this motion is predicated upon the assumption that the accident occurred within the scope of the employment, was subject to the provisions of the Workmen's Compensation Act and was specifically covered by the provisions outlined in Paragraph 10 of the complaint and that under the terms of the policy there was in fact a valid defense of non-coverage if it had been seasonably and properly raised."

### Discussion.

Chief Judge Thomsen of this court had occasion in American Automobile Ins. Co. v. Master Building Supply & Lumber Co. et al., D.C.Md.1959, 179 F. Supp. 699, 704–705, to review the Maryland law relative to an insurer's waiver of, or estoppel to assert, the defense of non-coverage. He stated:

"* * * Under Maryland law an insurer may waive forfeitures arising from some breach of condition. Royal Ins. Co. v. Drury, 150 Md. 211, 132 A. 635, 45 A.L.R. 582; Manufacturers Cas. Ins. Co. v. Roach, D.C.D.Md., 25 F.Supp. 852. *But here,* as in Bower & Kaufman v. Bothwell, 152 Md. 392, 136 A. 892, 52 A.L.R. 158, *'it is not a forfeiture that is to be found waived,* not a violation of a condition or any irregularity; *it is an inapplicability of the policy, so that the waiver argued for*

*would be, in effect, an extension of the contract beyond its defined limits, or a new contract. Such an extension would, at least, we think, require an estoppel, if not a new consideration,* to support it.' 152 Md. at page 397, 136 A. at page 894.

"In the later case of Prudential Ins. Co. of America v. Brookman, 167 Md. 616, 175 A. 838, after quoting from the Bower & Kaufman case, as above, the Maryland Court said: *'And it is doubted whether an estoppel, strictly speaking, could suffice to create a new contract.* "We readily agree with counsel for appellant that if the loss was not within the coverage of the policy contract, it cannot be brought within that coverage by invoking the principle of waiver or estoppel. Waiver or estoppel can only have a field of operation when the subject-matter is within the terms of the contract." Home Ins. Co. of New York v. Campbell Motor Co., (1933) 227 Ala. 499, 150 So. 486, 489. "In other words, by invoking the doctrine of estoppel and waiver it is sought to bring into existence a contract not made by the parties, to create a liability contrary to the express provisions of the contract the parties did make." Ruddock v. Detroit Life Ins. Co., 209 Mich. 638, at page 654, 177 N.W. 242, 248. (citing other cases) Whatever the description of the process, it must include the ordinary essentials of a contract, and among them, a meeting of the minds of the parties on the new undertaking, in this instance an undertaking to insure against disability occurring after the age of sixty as well as before it, if the insured should prove to be so old. And the evidence is not sufficient to show that the parties contemplated that undertaking.' 167 Md. at pages 620–621, 175 A. at page 840.

*"In the instant case there was no new contract, no change of position by Master or Murphy and no other*

*facts amounting to an estoppel. Non-waiver agreements are recognized and used extensively in Maryland, to the benefit of all concerned.* Hardware Mutual Casualty Co. v. Mitnick, 180 Md. 604, 26 A.2d 393." (Emphasis supplied.)

While Chief Judge Thomsen's opinion and the cases cited by him would seem to indicate that the coverage of a policy may not be extended by waiver or estoppel to an excluded risk, he still ruled that upon the evidence before him there was no change of position by the insureds and no other facts amounting to an estoppel. Should such rulings not be necessary here, they are nevertheless appropriate and certainly desirable in view of the doubt expressed by the Maryland Court of Appeals in the Prudential Insurance Co. case, supra, 167 Md. at pages 620–621, 175 A. at page 840, as to whether or not "an estoppel, *strictly speaking,* could suffice to create a new contract." (Emphasis supplied.) In any event, the possible existence of a non-waiver or reservation of rights agreement, or a new contract, must be considered.

■ As previously noted, one of the plaintiffs, the Travelers Insurance Company, also carried Workmen's Compensation Insurance on the named insured, Bob's Auto Service, Inc. As such a carrier, it paid awards for workmen's compensation not only to Miller but also to Kerr, each having claimed to have been injured in the course of employment and that the accident in question arose out of their said employment with Bob's Auto Service, Inc. Thus Travelers was on notice as to its potential defense of non-coverage under the Garage Liability Policy presently in suit. By verified pleadings and records it is established, without contest, that when the suit of Miller v. Kerr was instituted, plaintiff's liability adjuster fully recognizing the possibility of the defense of non-coverage under the Garage Liability Policy exclusions previously quoted wrote defendant Kerr on December 5, 1958 as follows:

" * * * We will protect your interests in this litigation to the ex-

tent of the coverage provided under your insurance policy FG 2434256 applicable to this loss. This policy provides coverage up to a limit of $100,000 for the claim for injury to any one person. Since this suit seeks damages in excess of the coverage provided by your policy, it is your right and privilege, should you consider it necessary, to have your own attorney associate with our attorneys in the defense of this litigation. If you decide to have your own attorney participate in this defense for the excess of damages claimed, would you advise this office and our attorneys.

"We are referring the Summons and Declaration to our attorneys * * * who will make the necessary appearance in the court and handle further defense of this matter in your behalf.

"In return we anticipate your full cooperation as required by the conditions of your policy. May we caution you to refrain from discussion of this matter except with properly identified representatives of this office or our attorneys."

Kerr retained no counsel of his own. The Miller v. Kerr suit went to trial on May 13, 1959. The plaintiffs, ever cognizant of the possibility of the defense of non-coverage, had applied on May 6, 1959, for a continuance in order that the question of liability could be determined by a declaratory judgment suit in the Maryland State Courts. Such suit was in fact filed, but the trial court refused to grant a continuance, and trial was had, resulting in the $19,500 judgment of Miller v. Kerr. Thereafter, without consultation with defendant Kerr, plaintiffs noted an appeal and at their expense had a transcript of the trial record prepared. Subsequently, this suit was filed, and plaintiffs then notified defendant Kerr in writing that for "reasons which are involved in other litigation pending between this company and you we have decided not to carry this appeal any further at our expense or through the attorneys whom we engaged for you. * * You are entitled to take over the case in its present situation through any attorneys of your own choosing and carry the appeal forward if you wish to do so at your own expense. * * * "

Defendant Kerr by affidavit averred that "at no time did he sign a reservation of rights allowing the plaintiffs The Travelers Insurance Company and The Travelers Indemnity Company to defend your affiant in the Circuit Court for Prince George's County under any limitations and at no time did your affiant sign a waiver agreement nor was a waiver agreement ever tendered to your affiant wherein your affiant allowed the plaintiffs The Travelers Insurance Company and The Travelers Indemnity Company to defend your affiant without waiving defenses of non-coverage contained in the policy. Affiant avers further that at no time did he ever receive any written communication that there was any question of non-coverage insofar as Mr. Miller's injuries were concerned and the first time any question of that kind, character or description arose came when Mr. Powers, affiant's counsel, stated there appeared to be some question as to whether the accident occurred within the scope of the policy and that this conversation occurred some three to five days prior to the commencement of the trial in the case of Miller v. Kerr and Shegogue, Law No. 11540."

The deposition of Powers, employed by plaintiffs to represent defendant Kerr in the Miller suit, was also filed. This showed that securing a reservation of rights or waiver of liability was not requested or discussed between him and the plaintiffs.

At the hearing on Kerr's motion for summary judgment the court called counsel's attention to the fact that although no formal reservation of rights or waiver of liability had been signed by defendant Kerr, it was possible that there had been an oral or tacit agreement to that effect, as consideration for the continued defense of the suit. The court therefore overruled the motion without prejudice,

with leave to defendant Kerr to file an affidavit to the effect that there was no such agreement, and with leave to plaintiffs to meet such a supplemental affidavit by a counter-affidavit from Powers (who was to be relieved of the attorney-client bar).

Thereafter the motion was renewed, and in support thereof Kerr's supplemental affidavit was filed, which states that:

"Affiant not only did not sign a written waiver or a written reservation of rights but at no time did he orally agree with his attorney Jerrold V. Powers that Mr. Powers could conduct the trial subject to a reservation of rights by the Travelers Insurance Company or that affiant would waive any liability of the Travelers Insurance Company in proceeding with affiant's defense. In fact the subject was not even discussed orally between affiant and Mr. Powers and the only question which was discussed orally by Mr. Powers with affiant was the following: Shortly before the trial Mr. Powers acquainted affiant with the fact that a question of coverage had arisen and that it was uncertain whether the policy in question would indemnify affiant in the event of an adverse judgment."

The Powers counter-affidavit states:

" * * * That on May 8, 1959, Mr. Kerr telephoned to affiant about said proceedings and affiant told Mr. Kerr that a request had been made for continuance of the case for the purpose of having determined by the Court prior to trial whether or not Travelers was responsible for the payment of any judgment that might be rendered against him, and affiant explained to Mr. Kerr the question involved about coverage and that it was Travelers' position that since it could not be determined before trial as Travelers desired, that it would be determined after trial.

"That thereafter, on May 12, 1959, affiant discussed this problem with Mr. Kerr at his home and again told him that Travelers wanted determined whether or not it would be required to pay judgment. Mr. Kerr asked affiant what the effect would be if Travelers was not required to pay any judgment, and affiant advised Mr. Kerr that it would mean that if a judgment were rendered against him it would be his responsibility to pay the same and not the responsibility of Travelers. That Mr. Kerr asked affiant what effect a judgment would have and discussed with him his property and the nature of the holding of the same, and affiant advised that such judgment would affect property in his name, if he had any. That Mr. Kerr discussed with affiant bankruptcy and the costs thereof and stated that he could go into bankruptcy if a judgment were rendered as against him, and that it would be worth the estimated costs of a bankruptcy proceeding.

"That affiant did not tender to Mr. Kerr any formal reservation of rights, nor say that the case would be proceeded with only with the understanding that Travelers would not be responsible. *That affiant did fully advise Mr. Kerr that the question of coverage having been unable to be determined prior to the suit that it would be determined afterwards, and it was affiant's understanding that this was agreeable with Mr. Kerr and that he was willing for the matter so to be determined, and that if Travelers was not responsible for the payment of the judgment that he fully understood the effect of the judgment against him and that he was willing to go into bankruptcy, if need be.*" (Emphasis supplied.)

Thus the supplemental affidavits raise a disputed question of fact as to the information imparted by Mr. Powers to Kerr.

Counsel for Kerr recognizes this on page 50 of his additional memoranda stating "in fact the only issue which even bears on this question [as to whether or not an oral or tacit agreement of non-waiver existed or plaintiffs had given due notice of reservation of their rights subsequently to contest coverage] was the alleged oral statements of the counsel of the insurer to the insured on the very eve of trial". However, even were defendant Kerr to adopt Powers' affidavit as correctly setting forth the exact context of their conversations, this court would nevertheless be required to choose between conflicting inferences in the record as Kerr's affidavit and pleadings would still imply that he did not, nor did he intend to, assent to a non-waiver or reservation of rights agreement while Powers' affidavit would imply the converse.

Moreover, assent by the insured to a non-waiver agreement is not always absolutely necessary as was stated in Commercial Casualty Ins. Co. v. Fruin-Colnon Contracting Co., 8 Cir., 1929, 32 F.2d 425, 432–433:

> "* * * Appellant [insured] was given full opportunity to assume control of the defense if it did not accede to the conditions imposed by appellee [insurer]. Its assumption that the insurer was handling the case under the terms of the policy, if construed to mean dissent from those conditions, was unwarranted in view of the repeated notice of reservation contained in the letters of counsel for appellee. Assent by the insured is not indispensable. There is no method by which the insurer can compel the assured to make an explicit agreement to that effect. 'All it could or was bound to do was to fairly and reasonably assert its rights under the policy in such a manner as would be notice to the insured that it did not intend to waive those rights by proceeding with the defense of the action.' Joyce on Insurance (2d Ed.) par. 2800, p. 4814, and cases cited.

> "* * * The company is not bound, at its peril, to withdraw from defense at the outset. If it gives due notice of its reservation, does not deprive the insured of control and participation in that defense, and, in general, does nothing to the prejudice of the insured, it waives none of its rights it may have under the provisions of the policy."

Consequently, even were lack of assent on insured's part manifest upon the record, the supplemental affidavits still raise disputed issues of fact both as to the information imparted by Mr. Powers to Mr. Kerr, and as to Mr. Kerr's comprehension thereof and reaction thereto, issues which are material and relevant to the question of whether or not the insured was given due notice of plaintiffs' alleged reservation of their rights subsequently to contest coverage. Any factual determination of this question, as well as the existence or nonexistence of an oral or tacit non-waiver agreement, would require resolving conflicts of fact, ambiguities and conflicting inferences existing upon the present record. Counsel for defendants themselves recognize this to be the case by characterizing the Powers' affidavit in Kerr's reply and renewal of the motion for summary judgment as "filled with circumlocution", "significant in not what it states but in what it does not state", "not reach[ing] the issue which was suggested by the Court" and by suggesting *if* the affidavit "be accepted at face value and all *legitimate inferences* that *could* flow from it, the best that could be said for the plaintiffs is that" it corroborates Kerr's affidavit. (Emphasis supplied.)

> "Conflicts and ambiguities are not to be resolved on motions for summary judgment, Coe v. Riley, 5 Cir., 1947, 160 F.2d 538, 540, nor is the trial court to choose between conflicting inferences, Sarkes Tarzian, Inc. v. United States, 7 Cir., 1957, 240 F.2d 467, 470. The court should not attempt to determine questions of credibility, Johnson

Farm Equipment Co. v. Cook, 8 Cir., 1956, 230 F.2d 119, 123; and all doubts as to the existence of a genuine issue as to a material fact should be resolved against the moving party, Sarnoff v. Ciaglia, 3 Cir., 1947, 165 F.2d 167, 168; Warner v. First National Bank of Minneapolis, 8 Cir., 1956, 236 F.2d 853, 857, certiorari denied 1956, 352 U.S. 927, 77 S.Ct. 226, 1 L.Ed.2d 162." Girard v. Gill, 4 Cir., 1958, 261 F.2d 695, 697.

Accordingly, summary judgment is inappropriate as to the issues of whether or not an oral agreement of non-waiver existed or plaintiffs gave due notice to the insured of reservation of their rights to contest coverage.

■ Faced with Chief Judge Thomsen's opinion in the American Automobile Insurance Company case, supra, 179 F.Supp. 699 and the Maryland decisions cited therein at pages 704-705, counsel for defendants in their additional memoranda changed the theory or premise upon which Kerr originally moved for summary judgment. The assumption initially adopted by defense counsel for the purposes of argument "that the accident occurred within the scope of employment, was subject to the provisions of the Workmen's Compensation Act and was specifically covered by the provisions [the Garage Liability Policy exclusion clauses]. outlined in Paragraph 10 of the complaint and that under the terms of the policy there was in fact a valid defense of noncoverage if it had been seasonably and properly raised" was withdrawn and defense counsel stated "the motion for summary judgment is *now predicated upon the premise there was a genuine dispute of fact with respect to the lawsuit filed in the Circuit Court of Marlboro, as to whether the accident occurred within the exclusion clause set forth in Paragraph 10 of this complaint or whether the accident occurred outside the exclusion clause set forth in Paragraph 10 of the complaint.*" Such a change of position requires a consideration of whether or not the issues submitted to the jury in the Miller-Kerr case required and resulted in a finding that Miller was not an employee of the named insured within the policy exclusion provisions, and if so, whether or not this can constitute a collateral estoppel against the insurance carrier. The trial court specifically instructed the jury as follows:

"The Court instructs you that one of the issues in this case is whether the plaintiff Miller was injured within the scope of his employment, and whether he was the employee, at the time of his injury, of the defendant Kerr, or of Bob's Auto Service Inc., and whether the defendant Kerr was negligent in the manner of operating the automobile at the time of the injury. * * *

"The Court further instructs you that if you find that Miller was at the time of the injury the employee of the defendant Kerr and within the scope of his employment, then under the Workmen's Compensation Law of Maryland your verdict would have to be for the defendant Kerr.

"If you find, or if you believe that the plaintiff Miller was the employee of the corporation Bob's Auto Service Inc., and that the defendant Kerr was negligent in the operation of the motor vehicle, then you should return a verdict for the plaintiff, *whether you find the injury occurred within the scope of employment or outside the scope of his employment.*" (Transcript, page 383; emphasis supplied).

Thereafter, the jury returned a general verdict in favor of Miller. Thus the issues submitted to the jury did not require and did not result in a finding that John Carey Miller was not an employee of the named insured within the policy exclusion provisions. Moreover, the record shows that the trial court specifically refused to submit to the jury the question of whether or not Miller was within the scope of his employment at the time of the accident. That Miller's counsel desired such a special finding by the Miller-Kerr jury, that he recognized the is-

sue was not an appropriate one to be litigated in that case and that he also realized a general verdict would, under ordinary circumstances, not support an assertion of the defense of collateral estoppel is evidenced by the following colloquy which took place when the trial court was discussing with counsel the instructions counsel desired given:

" * * * I can recover whether this accident occurred within the scope of the complainant's employment for the corporation or whether it was outside the scope of employment for the corporation; but there may be some question in view of another policy that is in existence, because if I get a general verdict, in other words, if the jury came in and said $60,000 for the plaintiff, I have a general verdict, but when I go to execute on it, then Mr. Powers would come in with the other policy and say 'Well, we are not covered, because I don't know whether when the jury returned their verdict'—apparently the policy must say in substance that they are responsible if the accident occurred outside the scope of Miller's employment for the corporation—if that is the case, I would have a verdict, but he would be able to say with a good deal of force that when the jury returned the verdict they did not make a determination as to whether when the accident occurred he was within the scope of employment for the corporation, or outside the scope of employment." (Statement by Miller's counsel—Transcript, pages 332–333).

" * * * [Miller's counsel]: Of course, I wanted the issue submitted to the jury to bring back an answer as to whether at the time of the accident he was within the scope of employment for the corporation: I wanted to have that answer.

"The Court: It seems to me that is not an appropriate issue in this case. The issue here is whether the plaintiff was injured through the negligence of the driver of the car, who was Kerr.

"[Miller's counsel]: Frankly, it is, your honor, except that Mr. Powers and I are being practical about it. I have not seen your policy. I thing I should state why I want this interrogatory. The reason is that if we do get a judgment and I get a favorable answer, maybe Mr. Powers would not put me to the trouble of another lawsuit, he might be disposed to acquiesce; but if a general verdict comes back and I don't have that answer—

"The Court: What is the question that you want.

"[Miller's counsel]: 'Do you find that at the time of the accident Miller was working within the scope of his employment?' " (Transcript, page 360).

" * * * The Court: There is not any issue before the jury on the question whether he was injured in the scope of his employment?

"[Miller's counsel]: Not actually."

In a stronger case for the application of the doctrine of collateral estoppel than the instant one, insured was sued by four persons who had been passengers in his automobile. It was contended at the trial, where he was represented by the insurer, that the passengers were his employees. Although Lunt, the insured, was also personally represented, counsel for the insurance company actually tried the cases, including opening, examination and cross-examination of witnesses and argument. Insured's policy did not cover accidents to any of his employees arising out of or in the usual course of his business. In the trial of the original actions this special question was submitted to the jury: "At the time of the accident in question was the said [injured passenger] in the employment of the defendant Joseph H. Lunt? The jury returned an answer of "yes" in each of the cases. Thereafter general verdicts

were had against the insured. In a subsequent suit on the insurance policy by insured there was an effort by him to invoke the doctrine of estoppel by judgment and res judicata. The court said:

"The original actions were against Lunt [insured] for negligence in operating his automobile. The insurer was not a party to these actions. Lunt and the insurance company were not adverse parties. The principle of res judicata has no application. The proceedings were not between the same parties or their privies. The causes of action were not the same and the rights now involved were not adjudicated in the original actions. * * *

"The principle of estoppel by judgment or verdict has no application. General verdicts were returned in the original actions, and it is not shown on what ground the verdicts were rendered. It does not appear that the answer of the jury [as to the special question submitted to them as to whether the plaintiffs were in the employment of Lunt] was essential in the cases, nor that the question whether the plaintiffs were employees of Lunt was involved in the controversies. See Freeman on Judgments (5th Ed.) Vol. 2, § 692, * * *." Lunt v. Aetna Life Ins. Co., 1928, 261 Mass. 469, 159 N.E. 461, 463.

This court agrees with the reasoning of the Lunt case rather than that of Jones v. Zurich General Accident & Liability Ins. Co., Ltd., 2 Cir., 1941, 121 F.2d 761, 764, relied upon by defendants to invoke the doctrine of collateral estoppel. Accordingly, this court concludes that the issues submitted to the jury in the Miller-Kerr case did not require and did not result in a finding that Miller was not an employee of the named insured within the policy exclusion provisions and that, even assuming a collateral estoppel could be asserted against an insurer under appropriate circumstances, no grounds for such a defense exist in this case on the present record.

■ Finally, it should be noted that defendants have alleged that "the improper trial of the Miller-Kerr case through the introduction of unnecessarily prejudicial issues and the failure to prosecute the appeal constitutes a separate estoppel against the plaintiffs" and have expended twenty-seven pages in their fifty-one page additional memoranda to support this allegation *factually*. Plaintiffs have met defendants' contention by merely stating in plaintiffs' countermemoranda that any allegation of prejudicial defense "is pure speculation and has no basis in fact." It is conceivable that this additional estoppel alleged by defendants, if established, would be relevant to the issue of whether or not an estoppel, *strictly speaking,* could suffice to create a new contract and thus bar plaintiffs from contesting coverage under the policy. But the existence or nonexistence of such an alleged estoppel cannot be determined upon the present record.

"Application of the doctrines of waiver, estoppel, and election requires a precise appraisal of the knowledge and situation of the parties at the times they acted. If such details are sufficiently manifest before a full trial upon the merits, summary judgment may be appropriate; but the record here permits such a wide range of speculation as to the extent of the knowledge of the defendant at the crucial times, and as to other relevant matters, that resolution of the interesting legal questions raised appears dependent upon the liberality with which the pleadings are to be construed, and inferences drawn, in favor of the plaintiffs. The details necessary for a confident application of the legal principles are lacking here, and we are of the opinion that, in the interest of justice, determination of the issues should await the taking of testimony and the completion of a record." Nichols v. Cities Service Oil Co., 4 Cir., 1958, 256 F.2d 521, 522.

Against these principles the granting of summary judgment in this case must be tested. The court concludes that the granting of summary judgment either against the plaintiffs on their claim or for defendant Kerr on his counterclaim is inappropriate and defendant Kerr's motion is, therefore, denied.